Constance K. BIGGINS, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–829.

United States Court of Veterans Appeals.

Submitted July 23, 1991.

Decided Sept. 25, 1991.

As Amended Oct. 3, 1991.

Constance K. Biggins, appellant pro se.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, Washington, D.C., Michael R. Smalls, Capitol Heights, Md., were on the pleadings for appellee.

Before KRAMER, FARLEY and STEINBERG, Associate Judges.

FARLEY, Associate Judge, filed the opinion of the Court, in which STEINBERG, Associate Judge, joined.

KRAMER and STEINBERG, Associate Judges, filed separate opinions.

FARLEY, Associate Judge:

This appeal arises in the context of appellant's service on active duty for training in the South Dakota National Guard. We hold (1) that the determination by the Board of Veterans's Appeals (BVA or Board) that appellant's multiple sclerosis was not incurred during her period of active duty for training was not clearly erroneous, 38 U.S.C. § 7261(a)(4) (formerly § 4061(a)(4)), and (2) that the Board's determination that appellant's service on active duty for training did not entitle her to the seven-year presumption for multiple sclerosis pursuant to 38 U.S.C. §§ 312(a)(4), 331, and 337 (1988) and 38 C.F.R. §§ 3.307(a)(1) and 3.309(a) (1990) was correct as a matter of law. Accordingly, the Secretary's motion is granted and the April 18, 1990, BVA decision is affirmed.

## I.

Appellant, Constance K. Biggins, joined the South Dakota National Guard in December 1979, and served on active duty for training from May 24, 1980, to August 30, 1980, and for four days in January 1984. A SF–93 Report of Medical History dated December 2, 1979, indicates no "Recurrent back pain." R. at 12. On December 3, 1979, appellant underwent an initial enlistment medical examination which found no abnormalities and listed her as qualified for enlistment. R. at 17. Specifically, appellant's "spine, other musculoskeletal" condition and "neurologic" condition were evaluated as "normal". R. at 16. No abnormalities were noted on a September 9, 1983, periodic medical examination, R. at 18–19, and appellant indicated that: "To the best of my knowledge and belief there has been no change in my medical or mental condition nor have I had any serious illness, injury, or medical operations since I last

accomplished a report of Medical History, SF 93 dtd 3 Dec 79." R. at 19. Appellant was found qualified for "retention". *Id.*

On January 3, 1984, appellant injured her lower back while lifting a manual typewriter. R. at 20, 22, 26 and 28. The injury was explained as a "[l]ower back sprain". R. at 20. Appellant was "given [a] physical examination and X–Rays, and [was] to be reexamined sometime during the period 9–13Jan84 [sic] for further evaluation." *Id.* Appellant was examined by Gregg M. Tobin, M.D., on January 4, 1984, "at which time she presented with numbness from the waist down after lifting a typewriter on the previous day. Diagnosis at that time was back strain or lumbosacral strain. On January 11, 1984, she was seen again. Her condition was still the same. At that time we planned to observe for one more week, and she was to call me if her condition stayed the same." R. at 31. Dr. Tobin reported that he had not seen appellant "since January 11, 1984." *Id.* A memorandum dated January 18, 1984, reports: "Individual has fully recovered and requires no further treatment. Individual was not incompacitated [sic] at any time and was returned to full military duty on 11 January 1984." R. at 30. Appellant has submitted a letter from K. Alan Kelts, M.D., dated April 9, 1985, which reports that appellant "had been hospitalized in February 1985 for a workup of numbness and tingling involving the entire body with possible optic neuritis. It was found, during this time, that the patient does have multiple sclerosis." R. at 34.

On May 20, 1988, appellant filed a claim for compensation for multiple sclerosis. R. at 38–41. Appellant was notified that her claim had been denied on July 6, 1988, R. at 44, and on December 14, 1988, she filed a Notice of Disagreement. R. at 45. On December 21, 1988, the rating board issued a rating decision denying appellant's claim for service connection for multiple sclerosis "since she did not incur this disability while under active duty for training nor [was] she ... eligible under the presumptive standards for active duty." R. at 47. On April 20, 1989, appellant had a personal

hearing before a Hearing Officer during which she testified that while on active duty for training in the summer of 1980 she had problems marching which caused her to sway to the right and bump into the soldier next to her. R. at 59–60. Appellant submitted a statement from a fellow soldier who had served with her in the National Guard: "Connie began having problems with her balance. I marched beside her and she was constantly stumbling into me.... In 1984 she began complaining about her eyes." R. at 65. On May 23, 1989, the Hearing Officer denied the claim. R. at 70–71.

On June 14, 1989, appellant had a personal hearing before a traveling section of the BVA sitting in Sioux Falls, South Dakota during which she testified that she began to experience eye problems during the summer of 1980 while on active duty for training. R. at 77. On June 15, 1989, appellant submitted letters in support of her claim from her mother-in-law and her husband. R. at 85–88. On April 18, 1990, the BVA denied appellant's claim for service connection for multiple sclerosis after concluding that "[m]ultiple sclerosis was not incurred in or aggravated during the appellant's periods of active duty for training. (38 U.S.C. 101(24), 106, 310, 331; 38 C.F.R. 3.102, 3.303(b))." *Constance K. Biggins*, BVA 90–14111, at 6 (Apr. 18, 1990). The Board also concluded that appellant's active duty for training status did not entitle her to the seven-year presumption for multiple sclerosis provided by 38 U.S.C. §§ 312(a)(4), 331, and 337. *Id.* at 5.

## II.

Appellant argues that she is entitled to service connection for her multiple sclerosis because it was incurred during one of her periods of active duty for training. *See* 38 U.S.C. §§ 101(24), 331 (1988). In response to this theory, the Board concluded:

> [W]hile [appellant] has submitted statements from individuals, as well as provided testimony on her own behalf, that she experienced certain symptomatology often associated with multiple sclerosis during her period of active duty for training, clinical documentation establishing the presence of multiple sclerosis during her periods of active duty for training is not of record. This panel must point out in this context that we have no doubt about the sincerity of the appellant's testimony or the sincerity of the individuals who submitted statements on her behalf. As the finder of fact, however, this panel must assess the probative value of the evidence before us. We must attach by far the greatest weight to the clinical evidence prepared during or closely proximate to service. This evidence entirely fails to show or reasonably suggest the presence of multiple sclerosis. In addition, we note that while she did complain of numbness in the lower extremity during a period of active duty for training in January 1984, this symptomatology was due to a back related disorder, and not multiple sclerosis.

*Biggins*, BVA 90–14111, at 4–5.

A determination of whether a disease is incurred in service is a finding of fact. The Court may set aside findings of fact made by the Board only if they are "clearly erroneous". 38 U.S.C. § 7261(a)(4). The Court has held that

> [i]t is *not* the function of this Court to decide whether a veteran was injured or whether any such injury occurred in or was aggravated during military service; rather, it is the function of this Court to decide whether such factual determinations made by the BVA in a particular case constituted clear error. Although this distinction may seem trivial, its significance cannot be overstated. In practical terms, under the "clearly erroneous" rule this Court is not permitted to substitute its judgement for that of the BVA on issues of material fact; if there is a "plausible" basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual conclusions, we cannot overturn them.

*Gilbert v. Derwinski*, 1 Vt.App. 49, 52–53 (1990); *see also Lovelace v. Derwinski*, 1

Vt.App. 73 (1990); *Hillyard v. Derwinski,* 1 Vt.App. 349 (1991).

█ Here, the BVA found that appellant served on active duty for training from May 24, 1980, to August 30, 1980, and for four days in January 1984. The Board also found that the first diagnosis of multiple sclerosis contained in the record dates from February 1985, over one year after appellant's last period of active duty for training. While appellant has introduced evidence, through her own testimony and the testimony of others, of symptoms she alleges to have experienced while on active duty for training, she has failed to introduce any medical evidence that indicates a diagnosis of multiple sclerosis or any of its symptoms that cannot be readily explained by other events. The service medical evidence of record, which includes two medical examinations and several reports with respect to appellant's January 3, 1984, back injury, contains neither a diagnosis of multiple sclerosis nor documentation of symptoms of multiple sclerosis. Because there is a plausible basis in the record for the Board's factual determination that appellant's multiple sclerosis was not incurred during her active duty for training, we hold that the Board's decision is not clearly erroneous.

### III.

Appellant argues alternatively that, even if her multiple sclerosis was not found to have actually been present during her active duty for training, it must be presumed to be service connected by virtue of 38 U.S.C. § 312(a)(4) which provides that "multiple sclerosis developing to a 10 percent degree of disability or more within seven years from the date of separation ... shall be considered to have been incurred in ... service." *See also* 38 C.F.R. §§ 3.307(a)(1), 3.309(a). The issue of whether this appellant is entitled to the benefit of this statutory presumption does not lend itself to a simple resolution; no less than four distinct but interlocking substantive and definitional statutes come into play.

By its terms, the presumption of 38 U.S.C. § 312(a)(4) is applicable only "in the case of any veteran who served for ninety days or more during a period of war." However, 38 U.S.C. § 337 extends the applicability of 38 U.S.C. § 312 to "the case of any veteran who served in the active military, naval, or air service after December 31, 1946." The applicability of the presumptions of § 312, therefore, are determined by reference to three distinct criteria: whether the claimant is a "veteran;" whether the claimant "served in the active military, naval, or air service;" and whether such service was "for ninety days or more during a period of war" (§ 312) or was "after December 31, 1946" (§ 337).

Since appellant's active duty for training took place periodically between 1980 and 1984, she would be eligible from the standpoint of the timing of her service because it occurred "after December 31, 1946". 38 U.S.C. § 337; *see also* 38 C.F.R. § 3.307(a)(1). The problem, however, is not with the timing of her service; rather, it is the type of her service which serves to preclude entitlement to the presumptions of 38 U.S.C. § 312.

█ The determinative phrase in 38 U.S.C. § 337 is "served in the active military, naval, or air service." Indeed, 38 U.S.C. § 101(2) (1988) defines "veteran" in terms of "a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable." Therefore, the definition of "active military, naval, or air service" is crucial to a determination whether the presumptions of 38 U.S.C. § 312 are applicable to a given claim. The statutory definition appears at 38 U.S.C. § 101(24) (1988):

> The term "active military, naval, or air service" includes active duty, any period of active duty for training during which the individual concerned was disabled or died from a disease or injury incurred in or aggravated in line of duty, and any period of inactive duty training during which the individual concerned was disabled or died from an injury incurred in or aggravated in line of duty.

*See also* 38 C.F.R. § 3.6 (1990). The conclusion compelled by this exercise in statutory interpretation is that the only "veterans" (as defined by 38 U.S.C. § 101(2)) who are entitled to the benefit of the presumptions of 38 U.S.C. § 312 are those who either (1) served on active duty; (2) were disabled or died from a disease or injury incurred in or aggravated in line of duty during active duty for training; or (3) were disabled or died from an injury incurred in or aggravated in line of duty during inactive duty training.

■ In the case at hand, the BVA found that appellant's service consisted of active duty for training from May 24, 1980, to August 30, 1980, and for four days in January 1984. This finding is amply supported by the record; there is no evidence that the appellant also served on active duty or inactive duty training. The determinative question, therefore, as to whether this appellant served in the "active military, naval, or air service" is whether during her period of active duty for training she was disabled from a disease or injury incurred in or aggravated in line of duty. On the record of this case, this question can be answered only in the negative.

As noted in Part II, we have concluded that the Board did not commit clear error in deciding that appellant did not develop multiple sclerosis during active duty for training status. In the absence of any other claimed or documented disability from injury or disease during her period of active duty for training, it necessarily follows that her period of active duty for training was not one "during which [appellant] was disabled ... from a disease or injury incurred in or aggravated in line of duty." Accordingly, the seven-year presumption of service connection for multiple sclerosis contained in 38 U.S.C. § 312(a)(4) is not available to appellant because she did not meet the "active military, naval, or air service" requirement of 38 U.S.C. § 337. Based upon the foregoing, we conclude that the BVA's construction of the relevant statutes contained in title 38 of the United States Code is correct.

IV.

In conclusion, we hold (1) that the determination by the Board that appellant's multiple sclerosis was not incurred during her period of active duty for training was not clearly erroneous, 38 U.S.C. § 7261(a)(4), and (2) that the Board's determination that appellant's service on active duty for training did not entitle her to the seven-year presumption for multiple sclerosis pursuant to 38 U.S.C. §§ 312(a)(4), 331, and 337 (1988) and 38 C.F.R. §§ 3.307(a)(1) and 3.309(a) (1990) was correct as a matter of law. Accordingly, the Secretary's motion is granted and the April 18, 1990, BVA decision is affirmed.

*It is so Ordered.*

KRAMER, Associate Judge, filed the following separate opinion:

I agree with the majority's holding that the decision of the Board of Veterans' Appeals (BVA) is not clearly erroneous in concluding that multiple sclerosis was not actually present during appellant's active duty for training. I also agree that in determining whether the multiple sclerosis is "presumed to be service connected by virtue of 38 U.S.C. § 312(a)(4) [ (1988) ]", *ante* at 6, a determinative question is whether the appellant served in the active military, naval or air service, and, in turn, a determinative question as to whether appellant served in such service, is whether during her period of active duty for training she was disabled from a disease or injury incurred in or aggravated in line of duty. *See* 38 U.S.C. §§ 101(24) and 337 (1988).

Nevertheless, the ultimate determinative question is whether appellant can use the presumption contained in § 312(a)(4) in order to satisfy this requisite service requirement. A convincing argument can be made that entitlement to the service connection presumption of § 312(a)(4) cannot be logically warranted where use of the presumption itself is needed to fulfill such service requirement. To permit the use of the presumption for service requirement purposes to qualify for the use of the presumption for service connection purposes

raises the specter of impermissible boot-strapping.

Notwithstanding the inherent problem in using the presumption to obtain the presumption, Congress, in providing for the applicability of the presumption in § 337, directed that the presumption apply to include those on active duty for training. By definition, however, as already discussed, to constitute such training, both disease and disability must be present during such training. § 101(24). The "Catch 22" that this statutory structure potentially presents is that if both disease and disability must actually be present during active duty for training, use of the presumption may never be possible. If so, Congress' direction to apply the presumption for service connection purposes becomes a total nullity.

The majority alludes to, without explanation, a possible distinction between the instant case and a case where there is another "claimed or documented disability from injury or disease during ... active duty for training", *ante* at 478. Perhaps this possible distinction would resolve the "Catch 22". However, as the majority opinion presently stands, the dilemma of the "Catch 22" remains unresolved and the presumption is rendered meaningless.

STEINBERG, Associate Judge, concurring:

The separate opinion of Judge Kramer conjures up a "Catch 22" "potentially" presented by the "statutory structure" and suggests that the Court's opinion somehow has left "unresolved" a "dilemma" of this imaginary "Catch 22". Since there is no "Catch 22", there is no unresolved dilemma. On its face, section 101(24) of title 38, U.S.Code, includes as a period of "active duty for training" (ADT) which qualifies as "active military, naval, or air service" **"any"** ADT "during which the individual concerned was disabled ... from a disease or injury incurred ... in line of duty" (emphasis added). Hence, the unassailable phrase in the Court's opinion: "In the absence of any **other** claimed or documented disability from injury or disease during [ap-

pellant's] period of active duty for training...." *Ante*, at 478 (emphasis added). If the appellant, for example, had suffered a lasting back disability during service from her in-service back "sprain" suffered on January 3, 1984 (R. at 20), which she did not apparently, then that back disability would be "a disability" that would have qualified her ADT service period as "active ... service" within the section 101(24) definition. That would have made her eligible for the benefit of the presumption under 38 U.S.C. §§ 1131, 1137, and 1112(a)(4) (formerly §§ 331, 337, and 312(a)(4)) for multiple sclerosis arising within seven years of such service.