Citation Nr: 1532771 
Decision Date: 07/31/15 Archive Date: 08/05/15

DOCKET NO. 10-43 585 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to service connection for a cervical spine disorder, to include intervertebral disc syndrome and spinal stenosis of the cervical spine with myelopathy, peripheral neuropathy, and status post decompressive laminectomy.

2. Entitlement to service connection for a right upper extremity disorder, to include cervical radiculopathy of the right upper extremity. 


REPRESENTATION

Appellant represented by: Tennessee Department of Veterans' Affairs


WITNESS AT HEARING ON APPEAL

Appellant and J. G. 




ATTORNEY FOR THE BOARD

B. Mullins, Counsel


INTRODUCTION

The Appellant served in the Army National Guard including a period of active duty for training (ACDUTRA) from July 15, 1964, to December 12, 1964.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an October 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee, denying the claims currently on appeal. These issues were previously remanded by the Board in February 2014 for further evidentiary development.

The Appellant testified at a videoconference hearing before the undersigned Veterans Law Judge in November 2011. A written transcript of this hearing has been prepared and associated with the Appellant's electronic record (Veterans Benefits Management System (VBMS).


FINDINGS OF FACT

1. The preponderance of the evidence supports a finding that the Appellant injured his neck prior to entering ACDUTRA beginning on July 15, 1964.

2. The evidence of record is in relative equipoise as to whether the Appellant's preexisting neck injury was aggravated beyond its natural progression as a result of his ACDUTRA from July 15, 1964, to December 12, 1964, resulting in a presently existing cervical spine disorder diagnosed as cervical intervertebral disc syndrome and spinal stenosis with myelopathy, peripheral neuropathy and status post-decompressive laminectomy.

3. The evidence of record is in relative equipoise as to whether the Appellant's preexisting neck injury was aggravated beyond its natural progression as a result of his ACDUTRA from July 15, 1964, to December 12, 1964, resulting in a presently existing right upper extremity impairment diagnosed as cervical radiculopathy of the right upper extremity.


CONCLUSIONS OF LAW

1. Based on the period of ACDUTRA from July 15, 1964, to December 12, 1964, the criteria for establishing entitlement to service connection for a cervical spine disorder, diagnosed as cervical intervertebral disc syndrome and spinal stenosis with myelopathy, peripheral neuropathy and status post-decompressive laminectomy, have been met. 38 U.S.C.A. §§ 101(24), 1110, 5107 (West 2014); 38 C.F.R. §§ 3.6(c), 3.102, 3.303 (2014).

2. Based on the period of ACDUTRA from July 15, 1964, to December 12, 1964, the criteria for establishing entitlement to service connection for a right upper extremity disorder, diagnosed as cervical radiculopathy of the right upper extremity, have been met. 38 U.S.C.A. §§ 101(24), 1110, 5107 (West 2014); 38 C.F.R. §§ 3.6(c), 3.102, 3.303 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duty to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014). In this case, the Board is granting in full the benefit sought on appeal. Accordingly, assuming, without deciding, that any error was committed with respect to either the duty to notify or the duty to assist, such error was harmless and will not be further discussed. 

Relevant Laws and Regulations

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if preexisting such service, was aggravated thereby. 38 U.S.C.A. 101(24)(B) , 1110, 1131 (West 2002); 38 C.F.R. § 3.303(a) (2014). 

In general, service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

In order to establish status as a "veteran," a claimant seeking benefits based on aggravation of an injury or disease during a period of ACDUTRA has the burden of demonstrating that the preexisting disability worsened in service and that such worsening was beyond the natural progression of the disease. The Court has held that placing the burden of establishing both elements on the claimant is consistent with the clear distinction that 38 U.S.C. § 101(24) makes between an ACDUTRA claimant and an active duty claimant. See Donnellan v. Shinseki, 24 Vet. App. 167 (2010).

Lay evidence, if competent and credible, may serve to establish a nexus in certain circumstances. See Davidson v. Shinseki, 581 F.3d 1313 (2009) (noting that lay evidence is not incompetent merely for lack of contemporaneous medical evidence). When considering whether lay evidence may be competent, the Board must determine, on a case by case basis, whether the Appellant's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue

The Board must assess the credibility and weight of all of the evidence, including the medical evidence, to determine its probative value, accounting for evidence that it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Equal weight is not accorded to each piece of evidence contained in the record; not every item of evidence has the same probative value. 

Furthermore, in determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Appellant prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert, 1 Vet App. at 49. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of the matter, the benefit of the doubt will be given to the Appellant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. 

Analysis

The Appellant contends that he is entitled to service connection for a cervical spine disorder, variously diagnosed as cervical intervertebral disc syndrome and spinal stenosis with myelopathy, peripheral neuropathy and status post-decompressive laminectomy, as well as right upper extremity impairment. Having reviewed the evidence of record, the Board finds that the Appellant is entitled to compensation for the aggravation of a preexisting neck injury during his period of ACDUTRA from July 15, 1964, to December 12, 1964, resulting in the disabilities presently on appeal. 

The Appellant's service treatment records fail to reflect that he suffered a chronic injury of the neck or the right upper extremity during the period of ACDUTRA from July 15, 1964, to December 12, 1964, service. The Appellant's January 1964 pre-induction examination report does note that the Appellant had been suffering from intermittent neck pain related to a football injury the previous summer. His January 22, 1964, physician summary associated with this examination also noted complaints of occasional pain in his neck since falling in 1963. The Appellant's service records contain no further evidence of an additional injury to the neck or right upper extremity during military service. However, he was afforded an X-ray of the cervical spine in November 1964 due to complaints of pain in the neck for one year. There is no in-service medical evidence of record of an additional disease or injury involving the neck or the right upper extremity.

Post-service medical records also fail to relate the Appellant's current cervical spine symptomatology and right upper extremity symptomatology to any specific injury during military service. The Appellant was seen by a private physician in July 1995. According to the note the Appellant was complaining of paresthesias in his arms and chronic neck pain. The Appellant described neck and back pain for the past 30 years. He reported that his pain initially began after a football injury while in high school. He subsequently began to notice a tingling in his right thumb and index finger in 1994 that lasted for 2 months. Since February 1995, he had tingling and numbness in his right 3rd through 5th fingers. There was no mention of an additional injury sustained during military service, and none of his claimed disabilities was otherwise directly linked to military service. 

Despite the lack of post-service medical records, the Appellant has repeatedly described an in-service injury in which he fell and hit his head on a tree. It is the Appellant's contention that this is when his disabilities began and that he never in fact played football in high school. In support of this allegation, he submitted a statement from a prior administrative official in October 2011 indicating that the Appellant's high school did not start a football program until several years after the Appellant graduated. The Appellant also testified at his hearing in November 2011 that he did not play football for his high school. 

The Appellant was afforded a VA examination for his claimed disorders in January 2015. The examiner performed an in-service examination and reviewed the Appellant's electronic claims folder. Regarding the cervical spine, the examiner concluded that the Appellant suffered from degenerative arthritis of the spine, intervertebral disc syndrome and spinal stenosis. He also suffered from degenerative arthritis of the right shoulder and cervical radiculopathy of the right upper extremity. The Appellant reported that while performing training with the US Army National Guard he was running downhill in the snow carrying a pack and a rifle, and tripped. He slid headfirst into a tree striking his helmet severely enough to see "stars" without loss of consciousness. The Appellant reported that he did mention this injury to his squad leader and platoon leader but was not seen by a medical care provider. The Appellant reported that since January 1964 he had suffered from progressive posterior neck pain, right shoulder pain and numbness and tingling of the 4th and 5th fingers of both hands. The Appellant was subsequently seen in 1995 with these complaints and an EMG and an X-ray revealed degenerative arthritis of the neck, with bone spurs and C3-8 radiculopathy. He subsequently underwent a cervical laminectomy. 

Upon reviewing the evidence of record and examining and interviewing the Appellant, the examiner opined that the Appellant's claimed condition, which clearly and unmistakably existed prior to service, was aggravated beyond its natural progression by an in-service event, injury or illness. The examiner noted that there was documentation in VBMS from a private board certified neurologist in 1995 that indicated that the initial cause of the Appellant's current neck condition was a preexisting football injury that occurred during football approximately 30 years earlier. The examiner noted that the specialist was board-certified and thorough in his investigation, and as such, his comments regarding a football injury had great weight with the present examiner.

The examiner further explained that the Appellant was also very credible. He stated that the source of his current neck condition was his service-connected neck injury in January 1964. However, there is no actual documentation in VBMS or provided by the Appellant of his claimed service-connected neck injury. However, he also adamantly and vociferously denied having played football at all or having suffered a preexisting neck injury. Therefore, he denied that his current neck/right upper extremity (including the shoulder) and nerve conditions were caused by a preexisting high school football injury. He provided letters of support for this assertion that he did not play football in high school from former high school administrators. 

After having considered all of the above, the examiner concluded that the Appellant did have a preexisting neck injury that was aggravated by a service-connected neck injury. This resulted in his neck condition causing a right upper extremity condition and peripheral neuropathy to progress beyond the natural course of the disease. However, additional nonservice-connected factors had also occurred after the Appellant's discharge from the military that have also contributed to his current neck, right upper extremity and peripheral nerve conditions. 

The Appellant has diffuse degenerative arthritis of other anatomical areas of the body, such as the lumbar spine, knees and hips that are of the same clinical nature and severity as his neck and right shoulder condition. Because the clinical nature and severity of these arthritis problems were the same as the cervical spine degenerative arthritis, this indicates that the degenerative process in the neck is the same as other areas of his body that were not injured and that the degenerative arthritis is a likely aggravating disease etiology of his current neck and right upper extremity conditions that has also caused his neck and right upper extremity conditions to progress beyond their natural course.

In summary, the VA examiner stated that it was her opinion that the Appellant had a preexisting neck injury that was aggravated by his in-service neck injury and caused his neck, right upper extremity and peripheral nerve neuropathy conditions to progress beyond the natural progression of the disease, and that this neck, right upper extremity and peripheral nerve conditions were also aggravated by his nonservice-connected condition of diffuse degenerative arthritis. 

Initially, the Board observes that the United States Court of Appeals for Veterans Claims (Court) has held that an individual fails to meet the status of "veteran" under 38 U.S.C.A. § 101(24), for purposes of the presumptions of soundness and aggravation (as well as the presumptions under 38 C.F.R. §§ 3.307 and 3.309), for service during ACDUTRA during which the individual was not disabled from a disease or injury incurred or aggravated in the line of duty. See Donnellan v. Shinseki, 24 Vet. App at 172; Smith v. Shinseki, 24 Vet. App. 40 (2010); see also Paulson v. Brown, 7 Vet. App. 466, 469-70 (1995); Biggins v. Derwinski, 1 Vet. App. 474, 478 (1991). Therefore, the presumptions of soundness and aggravation do not apply in this case. As a result, VA is required to only demonstrate that a neck injury existed prior to the Appellant's period of ACDUTRA from July 15, 1964, to December 12, 1964, and was not thereby aggravated, by a preponderance of the evidence. See Donnellan and Smith, both supra. Hence, as the benefit-of-the-doubt standard is to be applied, the Appellant needs only to demonstrate that there is an approximate balance of evidence in order to establish that he entered his period of ACDUTRA in sound condition, or to establish that a preexisting disorder was aggravated by such service. Id.

With that having been said, the Board finds that a preponderance of the evidence supports a finding that the Veteran had a pre-existing neck injury at his time of entry into ACDUTRA beginning July 15, 1964, and ending December 12, 1964. However, the evidence also reveals that this pre-existing injury was aggravated beyond its natural progression as a result of this period of military service. The Appellant has argued that he never in fact played football during high school, but the Board does not find this assertion to be credible. The Appellant discussed a football injury at the time of induction and again 30 years later when seeking surgical treatment. The Appellant has stated that these records must belong to another individual as he did not play high school football. However, the records clearly match the Appellant's full name, service number and date of birth. Furthermore, the mere fact that the Appellant did not play football for his specific high school team does not mean that he could not have suffered an injury playing football in a different setting during his high school years. As such, the Board finds that there was indeed a preexisting injury of the neck related to football, as evidenced by the medical records from the private neurologist and VA, and thus the Appellant's neck was not of sound condition when he entered ACDUTRA beginning on July 15, 1964.

While there is no evidence of a preexisting injury involving the right upper extremity or of the peripheral nerves, there is no basis upon which to grant service connection for these disabilities on a direct basis. There is no mention of any injury or symptomatology associated with the right upper extremity or the nerves at any time during the period of ACDUTRA. The record also contains no competent evidence linking a current right upper extremity disorder or neurological condition to military service. While the Appellant has related these conditions to an undocumented injury during military service, the record does not reflect that he has the requisite training or expertise to offer such a complex medical opinion.

Nonetheless, the January 2015 VA examiner (who concluded that there was clear and unmistakable evidence of a preexisting neck injury) opined that this injury was aggravated beyond its natural progression as a result of military service. The examiner explained that she found the Appellant's account of an in-service injury to be credible. Having reviewed the evidence of record, the Board finds no reason to call into question the credibility of his account of an in-service injury either. While this superimposed injury was not documented in the service records, the Appellant was seen in November 2004 with reports of consistent neck pain for the past year. The examiner further opined that not only was the preexisting neck injury itself aggravated (due to a superimposed in-service injury) beyond its natural progression, but his subsequent right upper extremity impairment and cervical myelopathy are also disabilities that arose, outside of the normal progression, as a result of an aggravation of the pre-service neck injury by a superimposed injury sustained during military service.

Resolving all reasonable doubt in favor of the Appellant, the Board determines the record evidence is at least in relative equipoise as to whether the Appellant's pre-service neck injury was aggravated beyond its natural progress, as a result of ACDUTRA from July 15, 1964, to December 12, 1964, resulting in disorders affecting the cervical spine and right upper extremity. Accordingly, entitlement to service connection for cervical intervertebral disc syndrome and spinal stenosis with myelopathy, peripheral neuropathy and status post-decompressive laminectomy, as well as for cervical radiculopathy of the right upper extremity, is warranted. See 38 U.S.C. § 5107(b). The appeal is granted.


ORDER

Entitlement to service connection for a cervical spine disorder, diagnosed as diagnosed as cervical intervertebral disc syndrome and spinal stenosis with myelopathy, peripheral neuropathy and status post-decompressive laminectomy, based on the period of ACDUTRA from July 15, 1964, to December 12, 1964, is granted. 

Entitlement to service connection for a right upper extremity disorder, diagnosed as cervical radiculopathy of the right upper extremity, based on the period of ACDUTRA from July 15, 1964, to December 12, 1964, is granted.




____________________________________________
DEBORAH W. SINGLETON
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs