# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 14-1811

David P. Hill, Appellant,

v.

Robert A. McDonald,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued July 28, 2016)                                  Decided October 7, 2016)

*Kevin F. King*, with whom *Patrick Berkshire*, *Benjamin Block,* and *Amy Odom,* all of Washington, D.C., were on the brief for the appellant.

*Rebecca A. Baird*, Appellate Attorney; *Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; and *Edward V. Cassidy, Jr.*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, *Chief Judge*, and SCHOELEN and GREENBERG, *Judges*.

GREENBERG, *Judge*: The appellant, David P. Hill, appeals through counsel that part of an April 7, 2014, Board of Veterans' Appeals (Board) decision that (1) found that new and material evidence had not been submitted to reopen a previously and finally denied low back disability claim, and (2) denied entitlement to benefits based on service connection for an acquired psychiatric disorder, to include post-traumatic stress disorder (PTSD).[1] On October 30, 2015, the Court issued a memorandum decision, wherein it vacated that part of the April 2014 Board decision on appeal and remanded the matters on appeal for readjudication. In that memorandum decision, the Court concluded that the presumption of aggravation was not applicable for a condition claimed to have worsened during a period of active duty for training (ACDUTRA). On November 18, 2015, the

---

[1]The Board also dismissed the appellant's claim for benefits based on service connection for a heart disability. The appellant presents no argument as to this claim and the Court therefore deems it abandoned. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc) (holding that, where an appellant abandons an issue or claim, the Court will not address it). Additionally, the Board remanded the appellant's claim for entitlement to a disability rating in excess of 10% for a service-connected right knee condition. That matter is not before the Court. *See Hampton v. Gober*, 10 Vet.App. 481, 483 (1997).

appellant filed a motion for panel review, arguing that this conclusion was erroneous. The Court granted that motion and on January 13, 2016, this matter was submitted for panel consideration. Oral argument was held on July 28, 2016. For the reasons below, the Court holds that, (1) where VA determines that a claimant has established veteran status for a period of ACDUTRA by establishing service connection for one disability, the claimant may take advantage of the presumption of aggravation for other preexisting disabilities claimed to have been aggravated during the same period of ACDUTRA; and (2) an entrance examination given prior to the period of ACDUTRA is not necessary for the application of the presumption of aggravation where the baseline severity of the preexisting condition can be determined through other contemporaneous evidence. Accordingly, the Court's October 30, 2015, memorandum decision is withdrawn; this decision is issued in its stead; that part of the April 7, 2014, Board decision that found that no new and material evidence had been submitted to reopen the appellant's claim for a back disability is reversed; that part of the April 2014 Board decision that denied service connection for PTSD is vacated; and the matters are remanded for readjudication consistent with this decision.

## I. FACTS

The appellant served on several periods of Reserve duty in the U.S. Army National Guards of Michigan and Wisconsin from October 1980 to July 2002. He had a period of ACDUTRA from June 7 to June 21, 1997. His service medical records (SMRs) and private medical records show treatment for depression and PTSD prior to service and during the June 7 to June 21, 1997, period of ACDUTRA. Private medical records also evidence treatment for a back condition related to a 1994 work injury.

On June 14, 1997, the appellant's unit was performing field exercises when a bolt of lightning struck a nearby tree. An eyewitness stated that he saw the appellant standing approximately one to three feet away from a tree when it was struck by lightning, at which point the appellant "fell to the ground." Record (R.) at 1677. Immediately following the incident, the appellant sought medical attention, complaining of knee and back pain.

The Wisconsin Army National Guard investigated the lightning strike and issued a line of duty investigation report, wherein the appellant's knee injury was classifed as incurred "in line of

2

duty" and his chronic low back pain as "in line of duty-[existed prior to service]-aggravation."  R. at 1310; *see also* R. at 688.  The investigator stated: "While there is evidence that the soldier had a history of low back pain, the force of being thrown to the ground may have aggravated that condition.  Therefore, the presumption of service aggravation applies."  R. at 1310.

In a January 1998 statement, Gary Mijaw, who holds a master of science in social work, opined that, "although Mr. Hill had a preexisting condition, his [psychiatric] symptoms became much worse after the [lightning strike]."  R. at 1694.  Additional private medical records also reflect the appellant's reports that both his physical and psychiatric symptoms increased after the lightning strike.

In June 2002, the appellant filed a claim for VA benefits based on service connection for a low back condition, a knee condition, and memory loss, among other conditions, alleging that these conditions were incurred secondary to being struck by lightning during a period of ACDUTRA. A VA regional office (RO) granted service connection for the appellant's right knee condition as a result of a lightning strike in March 2003, but denied his low back and memory loss claims.  The appellant failed to appeal this determination, and it became final.

In May 2003, the appellant underwent a VA psychiatric examination in which he was diagnosed with major depressive disorder and PTSD, secondary to childhood abuse.

In September 2008, the appellant sought to reopen his claims for a low back disability and short-term memory loss with PTSD and resubmitted copies of SMRs and private medical records. In a June 2009 rating decision, the RO denied the appellant's claim for PTSD (now bifurcated from his claim for memory loss) and determined that new and material evidence had not been submitted to reopen the low back claim.  Later that month, the appellant submitted a Notice of Disagreement (NOD) with this determination.  He also submitted additional private medical records and articles regarding the effects of lightning strikes.  Additional VA records were also obtained. The appellant underwent a VA psychiatric examination in March 2010, wherein the examiner opined

> that there is no evidence that the veteran's depression was permanently aggravated beyond normal progression by the lightning strike[,] as there appeared to be several other factors that were occurring between the time of the lightning strike and the time he was reassessed by his mental health provider[,] including heavy alcohol use which was not brought to the attention of the provider.  The veteran does report significant chronic pain as a factor in the depression and something that has limited his activity.

3

While it is this examiner's opinion that the lightning strike per se did not cause progression of the veteran's depression[,] it is this examiner's opinion that the chronic pain has permanently aggravated the veteran's depression. However[,] at this time[,] the veteran's chronic back pain is not service connected. This is being evaluated and is under appeal at this time. In summary[,] if it is deemed by the specific examiner evaluating the veteran's back pain that his back pain is service connected and caused by the lightening [sic] strike[,] then it would be this examiner's opinion that the veteran's depression was aggravated beyond normal progression by the chronic back pain[,] but that his depression was less likely than not aggravated beyond normal progression specifically by the event of the lightning strike.

R. at 454. The examiner added that "there appear to have been several compounding factors to explain the veteran's worsening depressive symptoms when reassessed . . . in January 1998 following the event in June 1997, including onset of alcohol dependence, ongoing chronic pain which also preexisted the lightning strike, and increased re-experiencing of childhood traumatic experiences." R. at 455.

In July 2010, the RO issued a Statement of the Case continuing the denial of the appellant's PTSD claim and reaffirming that new and material evidence had not been submitted to reopen his low back claim. The appellant perfected his appeal to the Board in August 2010 and requested a hearing. At a September 2011 hearing before a decision review officer, the appellant testified that, as a result of the lightning strike, "I was thrown 25 feet. Now, I hit a tree and hurt my knee and I had back issues." R. at 275.

In April 2014, the Board issued the decision currently on appeal, finding that new and material evidence had not been submitted to reopen the appellant's low back claim and denying benefits based on service connection for an acquired psychiatric disability, to include PTSD. The Board first acknowledged that the appellant's claims were based on a period of ACDUTRA and then determined that the appellant had established veteran status for these claims by virtue of his service-connected knee disability. The Board then found, with respect to the appellant's attempt to reopen his low back claim, that the articles he submitted regarding lightning strikes were not material and dismissed his September 2011 testimony that the lightning strike caused him to hit a tree as "patently incredible." R. at 14. In denying the appellant's acquired psychiatric disorder claim, the Board relied on the March 2010 VA opinion to find that "the weight of the evidence does not show that [the appellant's] disorder increased in severity during service." R. at 19.

4

## II. PARTIES' ARGUMENTS

### A. Appellant

The appellant argues that he is entitled to the presumption of aggravation for both disabilities on appeal. Because the appellant has established that he injured his right knee during a period of ACDUTRA, he contends that he has achieved veteran status for all of the claimed disabilities that he alleges he incurred during that period of ACDUTRA. The appellant reasons that the "statutory presumption of aggravation applies to *any* period of 'active military . . . service[,]' 38 U.S.C. § 1153, and [s]ection 101(24) defines 'active military . . . service' to include any active duty for training period resulting in a disability, 38 U.S.C. § 101(24)." Appellant's Motion for Panel Decision at 8.

The appellant argues that the Board clearly erred in finding that his psychiatric disability did not increase in severity during service. He therefore argues that reversal of this finding is the appropriate remedy and, as a result, he is entitled to the presumption of aggravation for his psychiatric condition. The appellant also argues that the Board clearly erred in determining that he did not submit new and material evidence to reopen his low back disability claim. Specifically, he argues that his September 2011 lay testimony as well as the articles he submitted indicating that lightning strikes can cause musculoskeletal damage are new and material to the issue of whether the appellant's current low back disability was aggravated by service.

### B. Secretary

The Secretary agrees with the appellant that a claimant who establishes veteran status by showing that a disability was incurred in or aggravated during a period of ACDUTRA may then be entitled to the presumption of aggravation of a different, preexisting disability alleged to have been aggravated during the same period of ACDUTRA. The Secretary believes that the Court's precedent, beginning with *Biggins v. Derwinski*, 1 Vet.App. 474, 477 (1991), and continued in *Paulson v. Brown*, 7 Vet.App. 466, 470 (1995), supports this position. The Secretary acknowledges that the facts here are distinct from those cases, but argues that "nothing in those cases contradicts the conclusion" that a claimant may be entitled to the presumption of aggravation based on a period of ACDUTRA once he or she has achieved veteran status. Secretary's Supplemental (Supp.) Memorandum (Mem.) at 7.

5

The Secretary asserts that an entrance examination is not necessary to establish the severity of a preexisting condition and that, "if relevant medical evidence existed that was contemporaneous to the ACDUTRA [v]eteran's entry into the relevant period of ACDUTRA, that evidence would suffice to establish a baseline as to the severity of the injury or disease for purposes of determining whether such injury or disease was aggravated during ACDUTRA." *Id.* at 8.

Further, the Secretary concedes that the Board erred in adjudicating the appellant's claim for a psychiatric condition, specifically because the Board did not support its finding that the "weight of the evidence does not show that [the appellant's psychiatric] disorder increased in severity during service" in light of the favorable evidence of record. Secretary's Brief at 10 (citing R. at 20). The Secretary also concedes that the Board "conflated the question of whether [the appellant's] psychiatric disorder increased in service with the issue of the nexus for any such increase" when it relied on the 2010 VA examiner's opinion "that the [v]eteran's preexisting depression was not aggravated by his period of active service." *Id.* at 11. The Secretary adds that the Board's characterization of the 2010 examiner's opinion is not accurate because the examiner did not state that the appellant's depression was not aggravated by his period of active service generally, but instead limited his opinion solely to the lightning strike.

Finally, the Secretary concedes that the Board erred in its treatment of the Internet articles submitted by the appellant in support of his request to reopen his low back claim. In his brief, the Secretary argued that the Board's determination that the appellant's September 2011 hearing testimony was not new and material because it was patently incredible is not clearly erroneous and should be affirmed. At oral argument, however, the Secretary conceded that the Board's finding was erroneous.

## III. ANALYSIS

### A. Veteran Status

Veterans' claims for disability compensation benefits comprise five elements: (1) Veteran status, (2) present disability, (3) service connection, (4) degree of disability, and (5) effective date of the disability. *See D'Amico v. West*, 209 F.3d 1322, 1326 (Fed. Cir. 2000). To obtain veteran status, a claimant must prove that he or she is a "veteran" for VA purposes, defined in relevant part

6

as "a person who served in the active military, naval, or air service." 38 U.S.C. § 101(2). "[A]ctive military, naval, or air service" includes "any period of [ACDUTRA] during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in line of duty." 38 U.S.C. § 101(24). This Court has held that, when a claim for benefits is based only on a period of ACDUTRA, there must be evidence that the claimant became disabled as a result of a disease or injury incurred or aggravated in the line of duty *during* the period of ACDUTRA. *See* 38 U.S.C. §§ 101(2), (22), (24); 38 U.S.C. § 1110; *Paulson*, 7 Vet.App. at 470.

Additionally, the Court has held that, "[b]ecause the phrase 'active military, naval, or air service' has a distinct meaning with respect to claims based on periods of active duty for training that requires evidence that a preexisting condition was aggravated 'in [the] line of duty' (that is, caused by the period of active duty for training), . . . where a claim is based on a period of [ACDUTRA], the presumption of aggravation under [section] 1153 is not applicable." *Smith v. Shinseki*, 24 Vet.App. 40, 48 (2011); *see also Donnellan v. Shinseki*, 24 Vet.App. 167, 171 (2010) ("[W]here a claim is based on a period of [ACDUTRA], the presumption of aggravation is not applicable."). These holdings–that a claim based only on a period of ACDUTRA requires evidence that the serviceperson became disabled during the period of ACDUTRA and that the presumption of aggravation is not applicable to a claim based on a period of ACDUTRA–seem unequivocal. *See Donnellan*, 24 Vet.App. at 171; *Smith*, 24 Vet.App. at 48. Those holdings, however, should not be read too broadly, as they arose in cases that are factually distinct from this one, in that, in each of those cases, the appellant sought benefits for only a single disability. Here, the appellant has established entitlement to service connection for a right knee disability that was incurred during a period of ACDUTRA, and is now seeking service connection for a back condition and psychiatric disorder he asserts were aggravated during that same period of ACDUTRA.

The initial question before the Board was whether the appellant's veteran status, established by virtue of his right knee disability, applies to different disabilities based on the same period of ACDUTRA. First, the Board acknowledged this Court's decisions on this issue, which have held that,

> [t]o establish status as a [v]eteran based upon a period of ACDUTRA, a claimant must establish that he was disabled from disease or injury incurred or aggravated in the line of duty during that period of ACDUTRA. 38 C.F.R. § 3.1(a), (d);

7

*Harris v. West*, 13 Vet.App. 509 (2000); *Paulson*[, *supra*]. Without the status as a [v]eteran[,] a claimant trying to establish entitlement to service connection cannot use the many presumptions in the law that are available only to [v]eterans. For example, presumptive periods allowing for the presumed incurrence of a condition in service do not apply to ACDUTRA . . . , and neither do the presumptions of soundness and aggravation. *See Donnellan*[, *supra* at 171]; *Smith*[, *supra*]; *Biggins*[, *supra*].

R. at 9. The Board then concluded:

The [v]eteran was in the Army National Guard (ARNG) of Michigan from 1980 to 1987, and in the ARNG of Wisconsin from October 1987 to July 2002 . . . . [He] had a period of ACDUTRA from June 7, 1997[,] to June 21, 1997. Service connection has been established for a right knee disability based on this June 1997 period, which is therefore considered to be a period of active service.

R. at 10. Thus, the Board found that, because the appellant had established that he was a veteran for the relevant period of ACDUTRA, his status as a veteran applied to other claims based on the same period of ACDUTRA.

Generally, veteran status is a finding of fact. *See Struck v. Brown*, 9 Vet.App. 145, 152 (1996). The Court may not overturn favorable findings of fact made by the Board. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007) ("The Court is not permitted to reverse findings of fact favorable to a claimant made by the Board pursuant to its statutory authority."); *see also* 38 U.S.C. § 7261(a)(4) (authorizing the Court to set aside or reverse clearly erroneous findings of material fact that are adverse to the claimant); *Roberson v. Principi*, 17 Vet.App. 135 (2003) ("[T]he Court is clearly without authority to reverse findings of fact that are beneficial to claimants."); *but see* 38 U.S.C. § 7261(a)(3)(A) (authorizing the Court to hold unlawful or set aside findings other than those of material fact adverse to the claimant if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law). Here, however, the issue of the appellant's status as a veteran, for purposes of the claims before the Court, turns upon the Board's interpretation of the statutory provisions related to the term "veteran." Hence, the issue of veteran status calls upon the Court to interpret the definition of "veteran" under section 101(2) and "active military, naval, or air service" under section 101(24). The Court reviews VA's interpretation of statutes de novo. *See Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003) ("[I]nterpretation of a statute or regulation

is a question of law."); *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (stating that the Court reviews "questions of law de novo without any deference to the [Board's] conclusions of law").

The Court must first analyze the language of the authorizing statute and determine "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). If the Court finds that the "intent of Congress is clear, that is the end of the matter; for the [C]ourt, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. On the other hand, if the Court concludes that "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

The plain language of subsection 101(2) that a "veteran" is a person who had "active military, naval or air service" links the definition of "veteran" to the nature of the individual's military service. 38 U.S.C. § 101(2). Subsection 101(24)(B) provides that a period of ACDUTRA is considered "active" service only when certain events occur during the ACDUTRA period, specifically when "the individual concerned was disabled . . . from a disease or injury aggravated in the line of duty." 38 U.S.C. § 101(24)(B). Under the plain language of the statute, then, if the specified events occur during a period of ACDUTRA, the military service period constitutes "active military, naval or air service." 38 U.S.C. § 101.

The phrase in subsection (24)(B) "from a disease or injury" contains the indefinite article "a." The indefinite article "a," is "[u]sed before nouns and noun phrases that denote a *single*, but unspecified, person or thing." WEBSTER'S II NEW COLLEGE DICTIONARY 1 (2001) (definition 1) (emphasis added). "A" is also defined as "[a]ny." *Id.* (definition 4). Thus, the plain language of the statute provides that once an individual establishes that *any* disability was incurred during a period of ACDUTRA, he has established that the particular period of ACDUTRA constitutes "active, military, naval or air service." By establishing that the period of ACDUTRA constitutes a period of "active" duty, the individual has demonstrated that he or she is a "veteran."

In sum, the Court holds that, once a claimant has achieved veteran status for a single disability incurred or aggravated during a period of ACDUTRA, that status applies to all disabilities

claimed to have been incurred or aggravated during that period of ACDUTRA.[2] Because the appellant is service connected for a right knee disability incurred during the relevant period of ACDUTRA, he has also established that he is a veteran for the purposes of his claims for a psychiatric disorder and low back disability that he alleges worsened during the same period of service.

## B. Presumption of Aggravation

Having found that the appellant is a veteran for the purposes of the claims on appeal, the Board determined that he was entitled to the presumption of aggravation, provided that he could demonstrate that his psychiatric disorder worsened during his period of ACDUTRA.[3] This determination, however, is a legal question that the Court reviews de novo. *See* 38 U.S.C. § 7261(a)(1); *Smith v. Gober*, 14 Vet.App. 227, 230 (2000).

Section 1153 provides that "[a] preexisting injury or disease will be considered to have been aggravated by *active military, naval, or air service*, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease." 38 U.S.C. § 1153 (emphasis added). As discussed in Part III.A above, "active military, naval, or air service" is, essentially, shorthand for veteran status. Accordingly, it is clear that only those claimants who have established veteran status are entitled to the advantage of the presumption of aggravation. It necessarily follows that, where VA concludes that a claimant has established veteran status as a result of one service-connected disability incurred during a period of ACDUTRA, that claimant–who is now a veteran for the purposes of all other claims based on that same period of ACDUTRA–is then entitled to the presumption of aggravation with respect to a different, preexisting disability shown to have worsened during the same period of ACDUTRA.

---

[2] Although this case deals exclusively with claims based on a period of active duty for training, the Court's holdings also apply to claimants whose claims are based on periods of *inactive* duty for training, as "active military, naval, or air service" also includes "any period of inactive duty for training during which the individual concerned was disabled or died–(i) from an injury incurred or aggravated in line of duty." 38 U.S.C. § 101(24)(c); *see Smith*, 24 Vet.App. at 47 n.4.

[3] The Board's finding of veteran status–and the Court's holding in this decision–applies equally to the appellant's claim for a low back disability, but because the Board determined that new and material evidence had not been received to reopen that claim, it did not consider the presumption of aggravation in relation to the appellant's low back disability.

C. Entrance Examination Requirement

The application of the presumption of aggravation is not automatic. It first requires a showing by the veteran of a permanent worsening of a preexisting condition during the relevant period of service, here, the period of ACDUTRA. *See Wagner v. Principi*, 370 F.3d 1089, 1096 (Fed. Cir. 2004). For veterans whose claims are based on periods of regular active duty, the presumption of aggravation is generally applied to those conditions noted on a service entrance examination shown to have permanently worsened during service. *See id.* ("[I]f a preexisting disorder is noted upon entry into service, the veteran cannot bring a claim for service connection for that disorder, but . . . may bring a claim for service-connected aggravation of that disorder. In that case, section 1153 applies."); *cf.* 38 U.S.C. § 1111 ("[E]very veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment."). As the Secretary concedes, however, "as a practical matter, ACDUTRA [v]eterans are not provided with routine examinations, as regular, military service personnel are." Secretary's Supp. Mem. at 8. Accordingly, "in ACDUTRA-based claims, there will likely be an absence of evidence as to a condition that preexisted a period of ACDUTRA and whether that condition was aggravated during that distinct period of ACDUTRA." *Id.* Accordingly, the Court must determine whether the application of the presumption of aggravation requires an entrance examination to establish the baseline severity of a preexisting disability claimed to have worsened during a period of ACDUTRA. This is a question of statutory interpretation and an issue of first impression for this Court.

As discussed in Part III.A, in questions of statutory interpretation, the Court must first determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. Again, in evaluating whether Congress has directly spoken to the question at issue, we begin with the language of the statute itself. *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993).

Section 1153 provides: "A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural

progress of the disease." The precise question at issue in this case is whether section 1153 requires that there be an entrance examination that notes a preexisting condition before the presumption of aggravation may be applied to that condition. The statute does not definitively answer that question–it makes no reference whatsoever to an examination. The Court has held, however, that the fact that a statute does not expressly require or prohibit something does not necessarily render the statute ambiguous. *See Osman v. Peake*, 22 Vet.App. 252, 258 (2008). "Ambiguity is a creature not [just] of definitional possibilities but [also] of statutory context." *Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 127 (2007). In other words, the statutory scheme must be read in the context intended by Congress.

The corollary to the presumption of aggravation is the presumption of soundness, which provides that

> every veteran shall be taken to have been in sound condition when *examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment*, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service.

38 U.S.C. § 1111 (emphasis added). Unlike section 1153, section 1111 makes explicit reference to an entrance examination. The U.S. Court of Appeals for the Federal Circuit considered the interplay of these two statutes and explained:

> *When no preexisting condition is noted upon entry into service*, the veteran is presumed to have been sound upon entry [under section 1111]. The burden then falls on the government to rebut the presumption of soundness by clear and unmistakable evidence that the veteran's disability was both preexisting and not aggravated by service. The government may show a lack of aggravation by establishing that there was no increase in disability during service or that any "increase in disability [was] due to the natural progress of the" preexisting condition.

> On the other hand, *if a preexisting disorder is noted upon entry into service*, the veteran cannot bring a claim for service connection for that disorder, but *the veteran may bring a claim for service-connected aggravation of that disorder*. In that case section 1153 applies and the burden falls on the veteran to establish aggravation.

*Wagner*, 370 F.3d at 1096 (emphases added) (citation omitted). Given the relationship between section 1111 and section 1153, the Court is unable to conclude that the absence of an explicit

reference to an entrance examination in section 1153 reflects Congress's unambiguous determination that such an examination is not necessary. The Court therefore concludes that section 1153 is ambiguous with respect to whether an entrance examination is prerequisite for the application of the presumption of aggravation.

Because the statute is ambiguous as to this question, there is a "gap" for the Agency to fill. *See Gallegos v. Principi*, 283 F.3d 1309, 1312 (Fed. Cir. 2002). Here, however, VA's implementing regulation, 38 C.F.R. § 3.306(a), merely parrots section 1153. Accordingly, the question remains one of statutory interpretation, rather than one of the deference owed to the Secretary's interpretation of a regulation. *See Sharp v. Shinseki*, 23 Vet.App. 267, 275 (2009). Under these circumstances, the Court is tasked with "impos[ing] its own construction on the statute." *Chevron*, 467 U.S. at 843 (holding that, where Congress left a gap in the statute for the Agency to fill, the Court may not "simply impose its own construction on the statute, *as would be necessary in the absence of an administrative interpretation*" (emphasis added)).

The Court concludes that the parties' agreed upon interpretation–that no entrance examination is necessary where there is contemporaneous evidence of the baseline severity of the preexisting condition–is the proper interpretation of section 1153 for claims based on a period of ACDUTRA where a claimant is able to establish veteran status by virtue of one service-connected disability and attempts to service connect a second disability under the presumption of aggravation. Because, as the Secretary notes, servicepeople entering into periods of ACDUTRA are not routinely provided entrance examinations, interpreting section 1153 as requiring an entrance examination as a prerequisite to the application of the presumption of aggravation would render meaningless the Court's holding that the presumption of aggravation applies under the circumstances of this case. Moreover, tasking VA with this evaluation is no hardship to the Agency, as VA adjudicators are already trained to evaluate contemporaneous evidence of the baseline severity of a preexisting condition in some cases. *See* 38 C.F.R. § 3.322(a) (2016) ("In cases involving aggravation by active service, the rating will reflect only the degree of disability over and above the degree of disability existing at the time of entrance into active service, whether the particular condition was noted at the time of entrance into active service, or *whether it is determined upon the evidence of record to have existed at that time*." (emphasis added)).

13

In sum, the Court concludes that an entrance examination is not required for a claimant in the appellant's circumstances to receive the presumption of aggravation for a claim based on a period of ACDUTRA. Instead, a claimant need only submit evidence that helps establish that "there [was] an increase in disability during such service." 38 U.S.C. § 1153. If a claimant submits documentation that, together with the rest of the record, evidences both the baseline severity of the preexisting condition prior to the period of ACDUTRA and a permanent increase in disability during a period of ACDUTRA, the claimant may take advantage of the presumption of aggravation.

### D. Claims on Appeal

Turning to the matters on appeal, and first to the appellant's quest to reopen his previously denied claim for benefits for a back condition, the Court agrees with the Secretary's concession that the Board erred in its treatment of the articles the appellant submitted pertaining to lightning strikes. The Board found that these articles were not material because they did not tend to show that the appellant's current low back disability was incurred in or aggravated by his period of ACDUTRA. However, one of the articles addresses the missing element of nexus in that it states that a lightning strike might affect the musculoskeletal system, including causing contusions, fractures, and muscle and ligament tears. *See* R. at 419. This article is, on its face, material to whether the lightning strike could have worsened the appellant's preexisting back condition. *See* 38 C.F.R. § 3.156(a) (2016) ("Material evidence" is evidence that "by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim."). Accordingly, the Court concludes that the Board's determination that the appellant failed to submit new and material evidence is clearly erroneous. *See* 38 U.S.C. § 7261(a)(4); *Suaviso v. Nicholson*, 19 Vet.App. 532, 533 (2006). The Board's finding is therefore reversed, and the Court will remand this matter with directions to the Board to reopen the appellant's claim for a back disability.

Additionally, the Court concludes that the Board's determination that the appellant's September 2011 testimony regarding the effect of the lightning strike is patently incredible is clearly erroneous. *See* 38 U.S.C. § 7261(a)(4); *Suaviso*, 19 Vet.App. at 533. Given the Board's explanation–that the appellant's testimony that he was thrown 25 feet into a tree is contradicted by other evidence of record–it seems clear that the Board engaged in an improper, pre-reopening weighing of the evidence, which is prohibited. *See Justus v. Principi*, 3 Vet.App. 510, 513 (1992)

14

(holding that VA is required to presume the credibility of newly submitted evidence for the purposes of determining whether that evidence is material and sufficient to reopen a previously denied claim). Although the Board is not required to "consider the patently incredible to be credible," *Duran v. Brown*, 7 Vet.App. 216, 220 (1994), there is nothing "inherently false or untrue" in a statement that a lightning strike threw a person some distance and into a tree, *id.* (providing an example of an inherently false or untrue statement, namely, "a male veteran's testimony that his alleged service-connected disabilities are the result of complications associated with having just given birth"). Given that the Court has determined that the Board will reopen the appellant's claim for a back disability on remand, the Board is free to weigh this evidence and accord it whatever probative weight it deems proper, provided its conclusion is adequately supported. *See Owens v. Brown*, 7 Vet.App. 429, 433 (1995); *see also* 38 U.S.C. § 7104(d)(1).

Finally, with respect to the appellant's claim for benefits for a psychiatric disability under a theory of aggravation, the Court agrees with the Secretary's concession that the Board provided an inadequate statement of reasons or bases for relying on the March 2010 VA psychiatric examination as evidence against the appellant's claim. Although the examiner opined that the appellant's depression was not aggravated directly by the lightning strike and instead attributed the aggravation in part to chronic back pain and heavy alcohol consumption, the examiner also noted that the appellant reported that "he began drinking alcohol quite heavily after the lightning strike," that he attributed his heavy drinking to the chronic pain associated with the lightning strike, and that he had never had problems with alcohol prior to 1997. R. at 459. It therefore is unclear why the examiner described the appellant's alcohol use immediately following the lightning strike as a compounding factor causing an increase in the appellant's depression rather than as favorable evidence of aggravation of depression related to the lightning strike. On remand, the Board must seek clarification of this issue from the March 2010 VA examiner or provide the appellant a new psychiatric examination that specifically addresses this issue.

On remand, the appellant may present, and the Board must consider, any additional evidence and arguments. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). If the Board on remand determines that there was a permanent increase in severity of the appellant's low back or psychiatric condition during the relevant period of ACDUTRA, it must afford the appellant the presumption of

15

aggravation for that condition. This matter is to be provided expeditious treatment on remand. *See* 38 U.S.C. § 7112.

## IV. CONCLUSION

Upon consideration of the foregoing, the Court's October 30, 2015, memorandum decision is WITHDRAWN; this decision is issued in its stead; that part of the April 7, 2014, Board decision that found that no new and material evidence had been submitted to reopen the appellant's claim for a back disability is REVERSED; that part of the April 2014 Board decision that denied service connection for PTSD is VACATED; and the matters are REMANDED for readjudication consistent with this decision.