# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No.10-3399

Kay M. Bowers, Appellant,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued November 14, 2012,                    Decided February 19, 2013)

*Rebecca C. Patrick,* of Amory, Mississippi, for the appellant.

*Jessica M. Swartz,* with whom *Will A. Gunn,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Kenneth A. Walsh*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief, for the appellee.

Before HAGEL, MOORMAN, and BARTLEY, *Judges*.

HAGEL, *Judge*: Kay M. Bowers[1] appeals through counsel a September 28, 2010, Board of Veterans' Appeals (Board) decision that denied her late husband entitlement to benefits for amyotrophic lateral sclerosis.[2] The Board also denied Mr. Bowers entitlement to benefits for carpal tunnel syndrome of the left upper extremity, carpal tunnel syndrome of the right upper extremity,

---

[1]Mrs. Bowers is the widow of former Army National Guardsman Wayne E. Bowers, who died on December 30, 2010, prior to filing his initial brief. On April 19, 2011, the Court granted Mrs. Bowers's motion to substitute.

[2]Amyotrophic lateral sclerosis is

> a motor neuron disease marked by progressive degeneration of the neurons that give rise to the corticospinal tract and of the motor cells of the brainstem and spinal cord, resulting in a deficit of upper and lower motor neurons; it usually ends fatally within two or three years. Called also Lou Gehrig Disease and Charcot syndrome.

DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1680 (32d ed. 2012) [hereinafter DORLAND'S].

Peyronie's disease,[3] Dupuytren contracture,[4] bone spur of the right elbow, left shoulder disability, and dysarthria.[5] This appeal presents the first opportunity for the Court to consider the applicability of the presumption of service connection for amyotrophic lateral sclerosis provided in 38 C.F.R. § 3.318 (2012).[6] As to the issues argued on appeal, the Court will affirm the September 2010 Board decision because the Board's determination that Mr. Bowers's service on active duty for training did not entitle him to the presumption of service connection for amyotrophic lateral sclerosis under § 3.318 was not clearly erroneous, and Mrs. Bowers fails to provide any legal support for her constitutional argument, such that it does not warrant judicial consideration.

## I. FACTS

Mr. Bowers served in the Army National Guard of South Carolina from March 1972 to March 1978, with a continuous period of active duty for training for more than 90 days from August 1972 to February 1973.

---

[3] Peyronie's Disease is "induration of the corpora cavernosa of the penis, producing a painful fibrous chordee and penile curvature." DORLAND'S at 541.

[4] Dupuytren contracture is "a usually autosomal dominant condition consisting of flexion contracture of a finger caused by shortening, thickening, and fibrosis of the palmar fascia; sometimes it is associated with longstanding epilepsy." DORLAND'S at 410.

[5] Dysarthria is "a speech disorder consisting of imperfect articulation due to loss of muscular control after damage to the central or peripheral nervous system." DORLAND'S at 575.

[6] That regulation provides:

(a) Except as provided in paragraph (b) of this section, the development of amyotrophic lateral sclerosis manifested at any time after discharge or release from *active military, naval, or air service* is sufficient to establish service connection for that disease.

(b) Service connection will not be established under this section:

(1) If there is affirmative evidence that amyotrophic lateral sclerosis was not incurred during or aggravated by active military, naval, or air service;

(2) If there is affirmative evidence that amyotrophic lateral sclerosis is due to the veteran's own willful misconduct; or

(3) If the veteran did not have active, continuous service of 90 days or more.

38 C.F.R. § 3.318 (emphasis added).

In July 2009, Mr. Bowers was diagnosed with amyotrophic lateral sclerosis.[7] Record (R.) at 227. In September 2009, he filed a claim for benefits for that condition and several secondary conditions.[8] In a November 2009 rating decision, a VA regional office denied Mr. Bowers's claim for benefits for amyotrophic lateral sclerosis. He filed a Notice of Disagreement with that decision and ultimately appealed to the Board.

In September 2010, the Board issued the decision on appeal. The Board denied Mr. Bowers's claim for benefits, on a presumptive basis, for amyotrophic lateral sclerosis because it found that there was no evidence that he experienced an injury or disease that was incurred in or aggravated by his period of active duty for training and, thus, that period of training "does not qualify as active military service, and [Mr. Bowers] does not achieve veteran status for the purposes of his claim." R. at 15. The Board also denied Mr. Bowers's claim on a direct basis because there was no evidence of record demonstrating the incurrence or aggravation of that condition during his period of active duty for training and no evidence demonstrating that his condition is related to his period of active duty for training. This appeal followed.

## II. PARTIES' ARGUMENTS

On appeal, Mrs. Bowers first asserts that her husband was entitled to disability compensation benefits for amyotrophic lateral sclerosis because the Board misinterpreted 38 C.F.R § 3.318 and "did not meet its burden and provide the affirmative evidence required under subsections 1-3 of § 3.318(b) to overcome the presumption [of service connection for amyotrophic lateral sclerosis]." Appellant's Brief (Br.) at 5. Mrs. Bowers further asserts that the plain language of § 3.318 is clear: there is "no reference to the veteran's status other than having had active, continuous service of 90 days or more." Appellant's Br. at 7-8. Mrs. Bowers next contends that the Court's holding in *Biggins v. Derwinski*, 1 Vet.App. 474, 477 (1991), that a claimant was not entitled to the presumption of service connection for multiple sclerosis because there was no evidence that a disease

---

[7] The Court notes that the parties use the abbreviation "ALS" when referring to "amyotrophic lateral sclerosis" in their briefs. However, because § 3.318 uses the full name of the disease, the Court will also use the full name for the purposes of this opinion.

[8] At oral argument, Mrs. Bowers clarified that all of the other disabilities identified were included as secondary to amyotrophic lateral sclerosis.

or injury was incurred in or aggravated by the claimant's period of active duty for training, is distinguishable from the case at hand. Finally, she argues that the Board impermissibly and unconstitutionally discriminated against Mr. Bowers when it determined that § 3.318 was not for application in this case.

The Secretary disputes each of these arguments. First, he argues that the Board properly determined that Mr. Bowers was not a "veteran" for the purposes of VA disability compensation benefits and, thus, Mr. Bowers was not eligible for the presumption of service connection for amyotrophic lateral sclerosis under § 3.318 as a matter of law. Second, the Secretary agrees that the language of § 3.318 is clear, but that this language indisputably restricts the applicability of the amyotrophic lateral sclerosis presumption to those who had "active military, naval, or air service," which Mr. Bowers's active duty for training does not qualify as under 38 U.S.C. § 101(24). Third, he argues that *Biggins* controls the outcome here because veteran status is a predicate for eligibility for VA disability compensation benefits. Lastly, the Secretary argues that the Board did not impermissibly discriminate against Mr. Bowers when it determined that § 3.318 was not applicable; it was merely applying the law to the facts.

### III. ANALYSIS

#### A. Amyotrophic Lateral Sclerosis

As an initial matter, although Mrs. Bowers argues that this case is one of statutory and regulatory interpretation that the Court must review de novo, *see* 38 U.S.C. § 7261(a)(1); *Smith v. Gober*, 14 Vet.App. 227, 230 (2000), a determination of entitlement to benefits generally involves findings of fact, which the Court reviews under the "clearly erroneous" standard of review. *See* 38 U.S.C. § 7261(a)(4); *Pentecost v. Principi,* 16 Vet.App. 124, 129 (2002); *Russo v. Brown*, 9 Vet.App. 46, 50 (1996). "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

### 1. Veteran Status

For VA purposes, the term "veteran" is defined as "a person who served in the *active military, naval, or air service*, and who was discharged or released therefrom under conditions other than dishonorable." 38 U.S.C. § 101 (2) (emphasis added); 38 C.F.R. § 3.1(d) (2012). The Board explained that Mr. Bowers's period of active duty for training did not qualify as active military service because the evidence of record, including March 1972 and January 1976 reports of medical history indicating that Mr. Bowers was in "good health" and reports of medical examination from those same months that revealed no abnormalities except a tattoo, R. at 13, does not demonstrate that "he was disabled from any injury during [active duty for training] . . . or that he was disabled from a disease during [active duty for training]." R. at 13; *see* 38 U.S.C. § 101(24)(B) (stating that the term "active military, naval, or air service" includes, among other things, "any period of active duty for training during which the individual concerned was *disabled or died from a disease or injury incurred or aggravated in* [*the*] *line of duty"* (emphasis added)); *see also* 38 U.S.C. §101(22) (stating that the term "active duty for training" includes full-time duty in the Army National Guard); 38 C.F.R. § 3.6(a) (2012).

Accordingly, the Board concluded that, because "the evidence of record does not establish that [Mr. Bowers] was disabled from any injury [or disease] during [active duty training,]" nor had Mr. Bowers identified any such evidence, he was not a veteran for the purposes of his claim. *See* 38 U.S.C. §§ 101(2), (22), (24) (explaining that, in the absence of such evidence, a period of active duty for training does not qualify as "active military, naval, or air service," and that an appellant does not qualify as a "veteran" by virtue of a period of active duty for training alone); 38 U.S.C. § 1110; *Acciola v. Peake*, 22 Vet.App. 320, 324 (2008) (citing *Mercado-Martinez v. West*, 11 Vet.App. 415, 419 (1998)); *Paulson v. Brown*, 7 Vet.App. 466, 470 (1995). Because the Board concluded that Mr. Bowers had not attained veteran status, it found that presumptive service connection for amyotrophic lateral sclerosis was not possible.[9] *See Smith v. Shinseki*, 24 Vet.App. 40, 45-48 (2010) (stating that presumptions of service connection cannot apply to claimants whose claims are based only on a

---

[9] The Court notes that Mrs. Bowers, in her brief, argues that the Board failed to establish by "affirmative evidence" that presumptive service connection for amyotrophic lateral sclerosis cannot be established. However, because the Board determined that Mr. Bowers had not attained veteran status, the presumption of service connection for amyotrophic lateral sclerosis was not for application as a matter of law; thus, the Board was not required to rebut it.

period of active duty for training); *Acciola*, 22 Vet.App. at 32 (holding that a presumption of service connection is inapplicable without previously established veteran status (citing *Biggins*, 1 Vet.App. at 478)).

The Board next considered whether Mr. Bowers was entitled to benefits for amyotrophic lateral sclerosis on a direct basis and determined that, although he had a current diagnosis of amyotrophic lateral sclerosis, there was no evidence of record demonstrating the incurrence or aggravation of that condition during his period of active duty for training and no evidence demonstrating that his condition is related to his period of active duty for training. *See* 38 U.S.C. § 1110 (explaining that direct service connection for VA disability compensation purposes is established when the record before the Secretary contains lay or medical evidence of (1) a current disability, (2) incurrence or aggravation of a disease or injury in service, and (3) a nexus between the in-service injury or disease and the current disability); *see also Davidson v. Shinseki*, 581 F.3d 1313, 1315-16 (Fed. Cir. 2009); *Shedden v. Principi*, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); 38 C.F.R. § 3.303 (2012).

A review of the Board's decision reveals that the Board considered the relevant laws and regulations when it determined that Mr. Bowers was not a veteran for the purposes of his claims, *see Struck v. Brown*, 9 Vet.App. 145, 152-53 (1996) (holding that the Board's determination of "veteran status" is a question of fact that is subject to the "clearly erroneous" standard of review), and did not clearly err in finding that he was not entitled to benefits for amyotrophic lateral sclerosis, *see Russo*, 9 Vet.App. at 50. The Board also provided an adequate statement of reasons or bases for its determination. 38 U.S.C. § 7104(d)(1); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990) (explaining that the Board's statement of reasons or bases must be adequate to enable a claimant to understand the precise basis for its decision, as well as to facilitate review in this Court).

After reviewing the entirety of the record and the arguments raised both in the parties' briefs and at oral argument, the Court concludes that there is a plausible basis for the Board's findings and is not "'left with the definite and firm conviction that a mistake has been committed.'" *Hersey*, 2 Vet.App. at 94 (quoting *U.S. Gypsum Co.*, 333 U.S. at 395)). Accordingly, the Board's determination that Mr. Bowers was not a "veteran" for VA disability compensation purposes is not clearly erroneous.

6

## 2. Applicability of Biggins

Mrs. Bowers argues that the Court's decision in *Biggins* is not applicable here because her case is "controlled by different regulations with different requirements." Appellant's Br. at 7. She does not, however, challenge the holding in *Biggins*; she seeks only to distinguish that case from her own.

At issue in *Biggins* was the presumption of service connection for multiple sclerosis, which provides that multiple sclerosis that manifests to a disabling degree of 10% or more within seven years from the veteran's separation from service is presumed to have been incurred or aggravated in service. 38 U.S.C. § 1112(a)(4) (formerly 38 U.S.C. § 312(a)(4)); *Biggins*, 1 Vet.App. at 475. Congress enacted the statute creating that presumption, thus binding the Secretary, to alleviate the problems of proving in-service incurrence or aggravation of multiple sclerosis, a condition that may remain undetected for many years after incurrence. *See* S. REP. NO. 87-1806, at 5 (1962); H.R. REP. NO. 87-1469, at 5 (1962). Because the claimant in *Biggins* only served on active duty for training and could not demonstrate that she was disabled from a disease or injury during her period of active duty for training, the Court determined that, as a matter of law, she was not entitled to the benefit of the statutory presumption of service connection for multiple sclerosis. 1 Vet.App. at 478.

Mrs. Bowers asserts that *Biggins* is distinguishable from this case because the statute at issue in *Biggins* specifically requires that veteran status be established, whereas

> the [amyotrophic lateral sclerosis] presumption is a free-standing regulation, having no relation to the chronic diseases identified by Congress in 38 U.S.C. § 1112, and the plain language of the [amyotrophic lateral sclerosis] regulation does not require that the individual establish veteran status before the presumption of service connection is applied.

Appellant's Br. at 8. However, it is axiomatic that, to receive VA disability compensation benefits, a claimant must first establish veteran status. *See Cropper v. Brown*, 6 Vet.App. 450, 452 (1994). Moreover, the Court has held that, absent established veteran status, presumptions of service connection are not applicable. *See Smith*, 24 Vet.App. at 45-48; *Acciola*, 22 Vet.App. at 32. Although Mrs. Bowers argues that these cases are not applicable to the presumption of service connection for amyotrophic lateral sclerosis, she presented no decipherable argument in her brief in support of this contention. At oral argument, however, Mrs. Bowers's argument was more refined.

At oral argument, Mrs. Bowers argued that the presumption of service connection for amyotrophic lateral sclerosis is based on a regulation and not a statute; thus, the Secretary has, in his discretion, selected the presumptive period without the input of Congress. Moreover, she asserted that neither Congress nor the Secretary set a presumptive period following service within which amyotrophic lateral sclerosis must develop; rather, amyotrophic lateral sclerosis may develop at any time following the requisite period of service and be considered presumptively service connected. *Compare* 38 C.F.R. § 3.318(a) ("[T]he development of amyotrophic lateral sclerosis manifested *at any time* after discharge or release from active, military, naval, or air service is sufficient to establish service connection for that disease.") (emphasis added), *with* 38 C.F.R. § 3.307 (a)(3) (explaining that multiple sclerosis "must have become manifest to a degree of 10 [%] or more within . . . 7 years"). She therefore contends that, the presumption of service connection for amyotrophic lateral sclerosis is not based on when the disease was incurred, but rather on how long a claimant served, regardless of how that service is defined. In other words, Mrs. Bowers argues that the Secretary has determined that a presumption of service connection for amyotrophic lateral sclerosis is necessary because that disease has been linked to the rigors of military service itself, not to the incubation period of the disease. *See* 73 Fed. Reg. at 54691 (explaining that studies indicate that there exists a statistical correlation between military service and development of amytrophic lateral sclerosis).

Although Mrs. Bowers argues that, because Mr. Bowers served, according to his DD Form-214, R. at 365, on "active service" for more than 90 consecutive days, he is entitled to the presumption of service connection for amyotrophic lateral sclerosis, the Secretary has limited that presumption to only those who served 90 consecutive days of "*active* military, naval, or air service," 38 C.F.R. § 3.318 (emphasis added). As explained above, this language implies a requirement that the individual attain veteran status, in that the statutory definition of "active military, naval, or air service" excludes those who have served on active duty for training regardless of the length of that service–unless it can be shown that "the individual concerned was disabled or died from a disease or injury incurred or aggravated" during that period of active duty for training. 38 U.S.C. § 101(24)(B). Thus, even though Mr. Bowers served on "active service" for more than 90 consecutive days, R. at 365, he is not entitled to the presumption of service connection for amyotrophic lateral sclerosis because he is not a veteran for VA disability compensation purposes.

8

Moreover, contrary to Mrs. Bowers's contention, § 3.318 expressly refers to a "veteran" in two places, stating that service connection will not be established "[i]f there is affirmative evidence that amyotrophic lateral sclerosis is due to the *veteran's* own willful misconduct[, or] if the *veteran* does not have active, continuous service of 90 days or more." 38 C.F.R. § 3.318(b)(2)-(3) (emphasis added). Thus, Mrs. Bowers's argument is premised on an incomplete reading of the regulation.

Based on these arguments, the Court concludes that Mrs. Bowers has failed to carry her burden of demonstrating that the Board clearly erred in finding that Mr. Bowers was not entitled to the benefit of the presumption of service connection for amyotrophic lateral sclerosis. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that the appellant has the burden of demonstrating error), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).

The Court is sympathetic to Mrs. Bowers's perception that it is unfair to exclude from this presumption those whose service was limited to active duty for training. As this Court has recognized, however, and as the Federal Circuit has reminded us, the Secretary has discretion in making many determinations regarding the availability of VA benefits. *See Haas v. Peake*, 525 F.3d 1168, 1197 (Fed. Cir. 2008) (upholding the Secretary's interpretation of 38 U.S.C. § 1116 and 38 C.F.R. § 3.307(a)(6)(iii) as requiring presence on the landmass or inland waters of Viet Nam for entitlement to a statutory presumption of service connection for exposure to certain herbicides because VA, as the implementing agency, maintains discretion to reasonably define that which Congress has not). By using the specific and statutorily defined phrase "active military, naval, or air service" to identify who is eligible for benefits under § 3.318, the Secretary has decided to limit the application of this presumption to those who qualify as veterans under 38 U.S.C. § 101(2), in effect excluding those whose active service is solely defined as "active duty for training," regardless of the length of that service, unless "the individual concerned was disabled or died from a disease or injury incurred or aggravated" therein. 38 U.S.C. § 101(24)(B). "But just because some instances of overinclusion or underinclusion may arise does not mean that the lines drawn [by VA] are irrational," *Haas*, 525 F.3d at 1193, and Mrs. Bowers fails to persuade the Court that § 3.318 conflicts with any

statutory requirements.[10] Moreover, remedying this situation is beyond the Court's power; we may not rewrite a regulation that was lawfully implemented and is a reasonable exercise of the rulemaking authority delegated to the Secretary by Congress. *See Smith v. Nicholson*, 451 F.3d 1344, 1349-50 (Fed. Cir. 2006) (citing *Auer v. Robinson*, 519 U.S. 452, 461-62 (1997)). Rather, it is left up to either the Secretary to modify his regulation if he sees fit or to Congress to consider whether to enact legislation expanding the class of former servicemembers eligible to receive VA disability compensation benefits presumptively for amyotrophic lateral sclerosis.

To the extent that Mrs. Bowers asserts that the plain language of § 3.318(b)(3) makes "clear that an individual is *only* disqualified if the individual's active service was not continuous, lasting 90 days or more," Appellant's Br. at 8 (emphasis in original), her argument lacks merit. First, as discussed above, the Board does not dispute that Mr. Bowers served a period of active duty for training that lasted at least 90 days. In fact, the Board specifically acknowledged that Mr. Bowers served a period of active duty for training from "August 1972 to February 1973" and "did not have 90 days of continuous service at any other time." R. at 11. Moreover, Mrs. Bowers fails to acknowledge that subsection (b)(3) of § 3.318 is not, in fact, the only disqualification for presumptive service connection for amyotrophic lateral sclerosis. Subsections (b)(1) and (b)(2) also disqualify claimants "[i]f there is affirmative evidence that amyotrophic lateral sclerosis was not incurred during or aggravated by *active military, naval, or air service* [,or] if there is affirmative evidence that amyotrophic lateral sclerosis is due to *the veteran's* own willful misconduct." 38 C.F.R. § 3.318(b)(1),(2) (emphasis added). Again, because Mr. Bowers did not establish veteran status, he is not entitled to this presumption.

---

[10]Mrs. Bowers also contends that the Board's determination is inconsistent with the research underlying the Secretary's decision to implement an amyotrophic lateral sclerosis presumption. Appellant's Br. at 9-10. However, Mrs. Bowers provides no support for the contention that the Board has the duty, much less the authority, to review VA regulations for compliance with underlying research. *See Rollings v. Brown*, 8 Vet.App. 8, 12 (1995) (explaining that the Board may not substitute its own medical judgment for independent medical evidence); *Kern v. Brown*, 4 Vet.App. 350, 353 (1993) (explaining that the appellant's attorney was "not qualified to provide an explanation of the significance of the clinical evidence"); *see also Locklear v. Nicholson*, 20 Vet.App. 410, 416-17 (2006) (explaining that the appellant must provide reasons for his argument); *Evans v. West*, 12 Vet.App. 22, 31 (1998) (stating the Court will give no consideration to a "vague assertion" or "unsupported contention").

### 3. Constitutionality of 38 C.F.R. § 3.318 as Applied to Mrs. Bowers

Finally, Mrs. Bowers challenges the constitutionality of 38 C.F.R. § 3.318, explaining that "[t]he root of this problem is the interpretation of 38 U.S.C. §101(24)(B) and the application of that interpretation." Appellant's Br. at 11. She further asserts that "there is no rational basis for the Secretary to discriminate against Mr. Bowers and deny him the benefit of the presumption." Appellant's Br. at 13.[11]

As previously discussed, § 3.318 applies to claimants whose amyotrophic lateral sclerosis "manifested at any time after discharge or release from *active military, naval, or air service.*" 38 C.F.R. § 3.318(a) (emphasis added). Contrary to Mrs. Bowers's assertions, § 3.318 does not specifically distinguish between those who served periods of active duty and those who served periods of active duty for training; it merely provides that "active military, naval, or air service" must be established before presumptive service connection for amyotrophic lateral sclerosis can be granted. The phrase "active military, naval, or air service" is defined as "any period of active duty for training *during which* the individual concerned was *disabled or died from a disease or injury incurred or aggravated in the line of duty*." 38 U.S.C. § 101(24)(b) (emphasis added); *see also* 38 C.F.R. § 3.6(a). Accordingly, it is not the regulation itself that makes the distinction to which Mrs. Bowers objects, it is the statute that defines "active military, naval, or air service."

To the extent that Mrs. Bowers intended to argue that section *101(24)(b)* is unconstitutional as applied to her husband, she fails to offer a coherent argument for that proposition. *See* Appellant's Br. at 11-14; *City of Cleburne, Tex. v. Cleburne Living* Center, 473 U.S. 432, 439-42 (1985) (explaining that, to demonstrate a constitutional violation, unless it involves a suspect or quasi-suspect class or fundamental right, the appellant must show that the requirement at issue does not bear a rational relationship to a legitimate government interest); *see also Robinson*, 9 Vet.App. at 401. Further, when questioned about this theory at oral argument, Mrs. Bowers's counsel stated

---

[11] The Court notes that, in her brief, Mrs. Bowers argues a constitutional violation under the Fourteenth Amendment of the U.S. Constitution; however, the Fourteenth Amendment is only applicable to the states, not to VA, a federal agency. Claims of discrimination therefore must be addressed as a violation of due process under the *Fifth* Amendment, which applies to the federal government. *See Robinson v. Brown*, 9 Vet.App. 398, 401 (1996) ("In 1954, the United States Supreme Court wrote: '[While] [t]he Fifth Amendment . . . does not [specifically] contain an equal protection clause as does the Fourteenth Amendment which applies only to the states[,] . . . discrimination may be so unjustifiable as to be violative of due process.'" (quoting *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)))(alterations in original).

without equivocation that there was no legal authority to support her position. Accordingly, the Court finds that Mrs. Bowers's argument is too underdeveloped to merit consideration. *See Brewer v. West,* 11 Vet.App. 228, 236 (1998) (explaining that the Court need not consider "mere assertions of constitutional impropriety for which [the appellant] has not provided any legal support" (citing *Gov't & Civic Employees Organizing Comm., CIO v. Windsor*, 353 U.S. 364, 366 (1957) ("Federal courts will not pass upon constitutional contentions presented in an abstract rather than in a concrete form."))); *see Helfer v. West*, 174 F.3d 1332, 1335 (Fed. Cir. 1999) (holding that to the extent the claimant has simply put a "due process" label on his contention that he should have prevailed on his claim, the claim is constitutional in name only).

### B. Other Claims

The Board also denied Mr. Bowers entitlement to benefits for carpal tunnel syndrome of the left upper extremity, carpal tunnel syndrome of the right upper extremity, Peyronie's disease, Dupuytren's contracture, bone spur of the right elbow, left shoulder disability, and dysarthria on a direct basis, and stated that

> [t]he issue of whether service connection for [those] disabilities is warranted on a secondary basis is not before the Board as it has not been adjudicated by the [regional office]. Nevertheless, service connection secondary to [amyotrophic lateral sclerosis] may not be granted as a matter of law as [Mr. Bowers] is not service-connected for [amyotrophic lateral sclerosis].

R. at 21.

At oral argument, Mrs. Bowers's counsel made clear that she was not appealing the Board's determination that Mr. Bowers was not entitled to benefits for those disabilities on a direct basis; thus, the Court concludes that Mrs. Bowers has abandoned any appeal of those issues and will therefore not address them.[12] *See Carbino*, 168 F.3d at 34; *Grivois*, 6 Vet.App. at 138. Insofar as

---

[12] Also at oral argument, Mrs. Bowers's counsel stated that she was not appealing the Board's finding regarding entitlement to VA compensation benefits for amyotrophic lateral sclerosis on a direct basis. Thus, she has abandoned her appeal of that issue and the Court will not address it. *See Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999); *Grivois v. Brown*, 6 Vet.App. 136, 138 (1994) (holding that issues or claims not argued on appeal are considered abandoned). Moreover, the Secretary asserts that any claims that the Court deems abandoned on appeal should be dismissed. *See* Oral Argument at 53:00, *Bowers v. Shinseki*, U.S. Vet. App. No. 10-3399 (Argued Nov. 14, 2011), *available at* http://www.uscourts.cavc.gov/oral_arguments_audio.php. However, that issue was not raised below or in the briefing and was presented for the first time at oral argument, therefore we will not address it. *See Carbino*, 168 F.3d at 34; *Grivois*, 6 Vet.App. at 138; *McFarlin v. Conseco Servs., L.L.C.*, 381 F.3d 1251, 1263 (11th Cir.2004)

Mrs. Bowers's counsel asserts that entitlement to benefits for those conditions is warranted as secondary to amyotrophic lateral sclerosis, her argument must fail. As previously explained in Part A above, the Board did not commit clear error in denying Mr. Bowers entitlement to benefits for amyotrophic lateral sclerosis. Moreover, the Board adequately explained that entitlement to benefits secondary to amyotrophic lateral sclerosis was not properly before it and even if it was, such benefits are not available, as a matter of law, where a claimant has not first established entitlement to disability compensation benefits for the primary disability. *See Allen v. Brown*, 7 Vet.App. 439, 448 (1995) (en banc) (explaining that secondary service connection is available when a claimant's disability is either (1) due to or the result of a service-connected disability, or (2) aggravated by a service-connected disability); 38 C.F.R. § 3.310 (2012).

### III. CONCLUSION

Upon consideration of the foregoing, as to the issues argued before the Court, the September 28, 2010, Board decision is AFFIRMED.

---

("A party is not allowed to raise at oral argument a new issue for review").