Citation Nr: 1532772 
Decision Date: 07/31/15 Archive Date: 08/05/15

DOCKET NO. 06-06 881 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUE

1. Entitlement to service connection for diabetes mellitus, type II, to include as due to herbicide exposure.

2. Entitlement to service connection for cardiovascular disease as due to diabetes
mellitus.

3. Entitlement to erectile dysfunction as due to diabetes mellitus.

4. Entitlement to bilateral peripheral neuropathy of the upper extremities as due to diabetes mellitus.

5. Entitlement to bilateral peripheral neuropathy of the lower extremities as due to diabetes mellitus.


REPRESENTATION

Appellant represented by: Robert V. Chisholm, Attorney


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

G.R. Waddington, Associate Counsel


INTRODUCTION

The Veteran had active duty for training (ACDUTRA) from July 1960 to January 1961, active duty service from October 1961 to August 1962 in the Navy - U.S. Navy Reserve, and subsequent periods of service in the Naval Air Reserve (NAR).

This matter came before the Board of Veterans' Appeals (Board) on appeal from a May 2005 decision by the Department of Veterans Affairs (VA) Regional Office
(RO) in Oakland, California.

A videoconference hearing was held before the undersigned acting Veterans Law Judge in June 2010. A transcript of the hearing has been associated with the claims file.

In a September 2010 decision, the Board denied the Veteran's claims on appeal.
The Veteran appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court). In a May 2012 memorandum decision, the Court vacated the Board's September 2010 decision and remanded the matter to the Board.

In February 2013, the Board remanded the claims for further evidentiary development. The case was subsequently returned to the Board.

The record before the Board consists of the Veteran's electronic Virtual VA and VBMS claims files.

The appeal is REMANDED to the Department of Veterans Affairs Regional Office. VA will notify the claimant if further action is required.


REMAND

Although further delay is regrettable, the Board finds that further development is required prior to adjudication of the Veteran's claims, in order to afford him every consideration. 

As a threshold matter, veteran status must be established as a condition of eligibility for service connection benefits. Bowers v. Shinseki, 26 Vet. App. 201, 206 (2013) (observing that it is "axiomatic that, to receive VA disability compensation benefits, a claimant must first establish veteran status"). The appellant has not yet established "veteran" status with regard to the unverified period(s) of service at issue. The fact that a claimant has established status as a veteran for other periods of service does not obviate the need to establish that he is also a veteran for purposes of the period of ACDUTRA where the claim for benefits is based on that period of ACDUTRA. Mercado-Martinez v. West, 11 Vet. App. 415 (1998).

To establish status as a veteran based upon a period of ACDUTRA, a claimant must establish that he was disabled from disease or injury incurred or aggravated in the line of duty during that period of ACDUTRA. 38 C.F.R. § 3.1(a), (d) (2014); Harris v. West, 13 Vet. App. 509 (2000); Paulson v. Brown, 7 Vet. App. 466 (1995). The same is true for establishing his entitlement to compensation for disability from injury, though not also disease, incurred or aggravated during his inactive duty training (INACDUTRA). Id. Without the status as a veteran, a claimant trying to establish service connection cannot use the many presumptions in the law that are available only to veterans. For example, presumptive periods do not apply to ACDUTRA or INACDUTRA, and neither do the presumptions of soundness and aggravation. See Donnellan v. Shinseki, 24 Vet. App. 167, 171 (2010); Smith v. Shinseki, 24 Vet. App. 40 (2010); Biggins v. Derwinski, 1 Vet. App. 474 (1991). 

Governing law provides that a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975 (Vietnam era) shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence establishing that he was not exposed to any such agent during that service. 38 U.S.C.A. § 1116(f) (West 2014). The term "active military, naval, or air service" includes active duty, and "any period of ACDUTRA during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in line of duty, and any period of inactive duty training during which the individual concerned was disabled or died from an injury incurred or aggravated in line of duty." 38 U.S.C.A. §§ 101(21), (22), (23), (24), 106; 38 C.F.R. § 3.6(a), (d).

In the Court's May 2012 memorandum decision which vacated the Board's September 2010 decision, the Court essentially indicated that the factual question of whether the Veteran actually served in Vietnam on ACDUTRA must be resolved. To that end, the Court indicated that the Board had not made a specific finding as to whether there was Vietnam service during a period of ACDUTRA.

The Veteran himself has made conflicting statements in this regard, including since the prior remand. He contends that he was in the Republic of Vietnam during reserve service, when he volunteered for and participated in June 1965 and July 1965 flights into Vietnam, and that he was directly exposed to Agent Orange (or other herbicides) on the ground at that time. See December 2004 claim and written statement; March 2008 informal conference report; June 2010 hearing transcript. At his hearing, he testified that he flew from Clark Air Force Base in the Philippines to Tan Son Nhut Air Base in Vietnam, and that he was in Vietnam in 1965 and 1966. He contends that his diabetes was caused by this alleged in-service herbicide exposure. 

In a December 2004 statement, the Veteran related that "In June and July of 1965, while in the active Naval Reserve, I made cargo delivery flights into South Viet Nam. Each trip, over a period of several days, we shuttled cargo from Clark Field in the Philippines to air bases in Saigon and Da Nang in South Viet Nam. At Ton Son Nhut air base in Saigon, on a couple of these trips we were parked next to the staging area where planes use[d] in spraying defoliant were loaded with Agent Orange. While we were re-fueling and unloading cargo from our plane we were exposed to small clouds of Agent Orange, that were either vented or leaked during the filling of planes used in the spraying process. Also, we were forced to walk thr[ough] puddles of Agent Orange that had been washed down after the re-filling of these aircraft. During one of these incidents I went over to talk with a GI that was working on one of the planes used for spraying to ask him what that stuff was. I was told that it was Agent Orange, a chemical used for defoliating the jungle." 

In a June 2005 statement, he contended that he served in Vietnam while on special airlift assignment OA-1 and OA-7. In a February 2006 statement, he said was exposed to Agent Orange while performing cargo air lifts into South Viet Nam during the months of June and July 1965. He said the regulations do not seem to cover his Vietnam service because he "volunteered."

In January 2007, he submitted a document entitled "Chronology of Significant Events in Naval Aviation: 'Naval Air Transport.'" This document, apparently printed from a website, states that in May 1965, members of the Naval Air Reserve began a volunteer airlift supporting operations in Vietnam. On weekends, pilots and crews reportedly carried personnel and cargo to the combat zone.

In January 2010, he said he served in Vietnam, but it was not active duty training time. He asked how a Veteran could serve on active duty training time in Vietnam. In a May 2014 affidavit, he said he had two periods of active duty between April and July 1965, and again from October to December 1966. He said he was in Vietnam in June and July 1965, and was also in Vietnam during his annual cruise in 1967.

The Veteran has submitted supporting evidence to show that he participated in flights into the Western Pacific during 1965. See June 1965 and July 1965 Correspondence from the Commanding Officer, Naval Air Reserve Training Unit (NARTU), Naval Air Station, Alameda (thanking the Veteran and his fellow Reservists for participating in Special Airlift Flight Nos. OA- 1 and OA-7, which delivered cargo to the Navy's operating forces in the Western Pacific). 

He also submitted an April 1968 Certificate from the Naval Reserve Association commending him for volunteering as a Transport Flight crew member in support of the U.S. Naval Air Reserve's WESTPAC operations to South Vietnam. An attached memorandum to the Veteran from the U.S. Naval Air Reserve Training Unit dated in June 1968 indicates that the attached certificate was forwarded with regard to his past participation in one or more "WESTPAC" flights.

He has also submitted June 2008 correspondence signed by the former Commander of the Tactical Support Squadron VR-872, stating that the Veteran flew supplies and personnel in and out of Vietnam in 1965. The subject line of the letter indicated that the Veteran volunteered for special air lift into Vietnam.

The RO has attempted to verify the type of service that the Veteran had in June and July of 1965 when he allegedly flew into Vietnam. See September 1966 ACDUTRA orders for the annual cruise in September 1966; Military Personnel Records; April 2009 & March 2011 Responses from the National Personnel Records Center (NPRC) (finding no documentation of the Veteran's flying into Vietnam in June and July 1965, to include no orders to perform such flights and no evidence to substantiate any service in the Republic of Vietnam); May 2011 correspondence from NPRC stating that there is no evidence in the Veteran's file to substantiate any service in the Republic of Vietnam; May 2014 correspondence from the Naval History and Heritage Command (finding no documentation that Squadron 872 (or any special airlift flights, to include OA-1 and OA-7) flew into Vietnam, that landings of U.S. Naval aircraft were not documented unless there was a mishap or unusual circumstance related to the landing, and that landing records were not retained unless a mishap resulted in fatalities and/or extensive damage).

Despite prior and extensive development of the Veteran's record, further development is necessary before the Board can make a fully informed decision on the Veteran's claim. The RO should attempt to verify the Veteran's latest contentions of presence in Vietnam in his May 2014 affidavit. The Board also requires clarification as to the generally accepted meaning of the phrase "Western Pacific" by the Navy in June and July 1965. This phrase was used in the June 1965 and July 1965 correspondence from the Commanding Officer, NARTU, described above. On remand, the RO should attempt to ascertain if the use of this phrase at that time generally included Vietnam. (These letters stated that the Veteran assisted in delivering cargo to the Navy's operating forces in the Western Pacific in June and July 1965.) 

Further, with regard to the Veteran's lay statements regarding Agent Orange exposure contained in his December 2004 statement, quoted above, the Board also requires clarification as to the normal practices and procedures that governed the storage and handling of herbicide agents such as Agent Orange in aircraft in preparation for aerial spraying during the Vietnam Era, to include June and July 1965.

The case is REMANDED for the following actions:

1. The RO must also contact the Joint Services Records Research Center (JSRRC)/appropriate military authority and attempt to verify the Veteran's latest assertion that he had active duty in 1966 and was in Vietnam during an ACDUTRA annual cruise in 1967. See his May 2014 affidavit, which was received in June 2014, after issuance of the RO's May 2014 formal finding of a lack of information required to corroborate herbicide exposure in Vietnam.

The RO should also ask for confirmation that the Veteran's military record is complete (i.e., that service records other than those associated with the claims file do not exist and that further attempts to obtain such records would be futile, see 38 C.F.R. § 3.159(c)(2)), and if so, issue another memorandum with a Formal Finding of Unavailability.

2. The RO must contact the Joint Services Records Research Center (JSRRC) or appropriate Naval/military authority to ascertain:

a) how the term "Western Pacific" was defined and/or used in 1965 and, specifically, whether this phrase was generally understood to include Vietnam. See June and July 1965 Navy Memoranda;

b) how herbicide agents, to include Agent Orange, were stored and handled on U.S. Air Force bases and in aircraft in Vietnam between June 1965 and July 1965 in preparation for aerial spraying. See December 2004 Statement ("At Ton Son Nhut air base in Saigon . . . we were parked next to the staging area where planes use[d] in spraying defoliant were loaded with Agent Orange. While we were re-fueling and unloading cargo from our plane we were exposed to small clouds of Agent Orange, that were either vented or leaked during the filling of planes used in the spraying process. Also, we were forced to walk thr[ough] puddles of Agent Orange that had been washed down after the re-filling of these aircraft.")

3. After the above development, and any other development that may be warranted based on additional information or evidence received due to this remand, is completed, readjudicate the claims on appeal.

When readjudicating the claim of service connection for diabetes mellitus, the RO should address evidence that shows that the Veteran earned 8 total drill points, 7 ACDUTRA points, and 15 gratuitous points (30 points total) between April and June 1965, and 12 drill points between July and September 1965, see Record of Naval Reserve Service, and the Veteran's testimony that he was not on ACDUTRA at the time he reportedly served in Vietnam. See January 2010 Statement & June 2010 Hearing Transcript.

If the benefits sought are not granted, the Veteran and his representative should be furnished with a Supplemental Statement of the Case (SSOC) and afforded a reasonable opportunity to respond to the SSOC before the record is returned to the Board for further review.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
C. L. WASSER
Acting Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).