﻿Citation Nr: AXXXXXXXX
Decision Date: 07/25/19 Archive Date: 07/24/19

DOCKET NO. 190124-2625
DATE: July 25, 2019

ORDER

Entitlement to service connection for a right foot disability, to include nonunion of the metatarsal bones (also diagnosed as a right foot injury, status post-metatarsal resection) and hammer toe, is granted.

Entitlement to service connection for a back disability, to include as secondary to a right foot disability, is granted.

Entitlement to service connection for a sleep disorder, to include as secondary to a right foot disability and back disability, is denied.

REMANDED

Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities remanded.

FINDINGS OF FACT

1. Resolving reasonable doubt in the Veteran’s favor, his right foot disability is at least as likely as not related to an in-service injury, event, or illness.

2. Resolving reasonable doubt in the Veteran’s favor, his back disability is at least as likely as not related to his service-connected right foot disability.

3. The preponderance of the evidence shows that the Veteran was not diagnosed with a sleep disorder at any time during the pendency of the appeal.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a right foot disability, to include nonunion of the metatarsal bones and hammer toe, have been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309.

2. The criteria for entitlement to service connection for a back disability, to include as secondary to a right foot disability, have been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309, 3.310.

3. The criteria for service connection for a sleep disorder, to include as secondary to a right foot disability and back disability, have not been met. 38 U.S.C. §§ 1101, 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

REASONS AND BASES FOR FINDING AND CONCLUSION

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as

amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board

is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the

Rapid Appeals Modernization Program.

The Veteran served on active duty in the United States Army from May 1974 to November 1976, with additional service in the United States Navy Reserve.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from October 2013 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO).

As a preliminary matter, the Board notes that the RO issued a rating decision on July 29, 2014, which erroneously treated the Veteran’s claims as motions to reopen. As the Veteran filed a timely notice of disagreement for the October 2013 rating decision on July 14, 2014, the October 2013 rating decision did not become final and the determination regarding new and material evidence was unnecessary. As such, the claims at issue in this appeal arise from the October 2013 rating decision.

In his May 2018 RAMP election, the Veteran selected the Higher-Level Review lane. Accordingly, the August 2018 RAMP rating decision only considered the evidence of record prior to receipt of the May 2018 RAMP election. In September 2018, the Veteran submitted another RAMP election form and selected the Supplement Claim lane. Accordingly, the January 2019 RAMP rating decision considered additional evidence received after the May 2018 RAMP election. 

The Veteran timely appealed the January 2019 RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction. Thus, the review will be based upon the evidence submitted to VA as of the January 2019 RAMP rating decision.

Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service, or if preexisting service, was aggravated therein. 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

To establish service connection for a disability, there must be competent evidence of the following: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship or nexus between the present disability and the disease or injury incurred or aggravated during service. Horn v. Shinseki, 25 Vet. App. 231, 236 (2010); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Gutierrez v. Principi, 19 Vet. App. 1, 5 (2004) (citing Hickson v. West, 12 Vet. App. 247, 253 (1999)). In many cases, medical evidence is required to meet the requirement that the evidence be “competent”. However, when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination “medical in nature” and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303, 309 (2007).

Service connection for certain chronic diseases, including arthritis, may be presumed to have been incurred in service by showing that the disease manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). Such a chronic disease is presumed under the law to have had its onset in service even though there is no evidence of that disease during the period of service. 38 C.F.R. § 3.307(a). 

The term “chronic disease” refers to those diseases listed under section 1101(3) of the statute and section 3.309(a) of VA regulations. 38 U.S.C. § 1101(3); 38 C.F.R. § 3.309 (a); Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013). For such diseases, the second and third elements of service connection may be established by demonstrating (1) that a condition was “noted” during service; (2) post-service continuity of symptoms; and (3) medical or, in certain circumstances, lay evidence of a link between the present disability and the continuity of symptoms. 38 C.F.R. § 3.303(b); see Walker, 708 F.3d at 1340.

If a chronic condition is noted during service or during the presumptive period, but the chronic condition is not “shown to be chronic, or where the diagnosis of chronicity may be legitimately questioned,” i.e., “when the fact of chronicity in service is not adequately supported,” then a showing of continuity of symptomatology after discharge is required to support a claim for disability compensation for the chronic disease. Proven continuity of symptomatology establishes the link, or nexus, between the current disease and serves as the evidentiary tool to confirm the existence of the chronic disease while in service or a presumptive period during which existence in service is presumed.” Walker at 1336; 38 C.F.R. § 3.303(b).

Finally, a disability which is proximately due to or the result of a service-connected disease or injury shall be service-connected. When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition. 38 C.F.R. § 3.310.

Whether service connection is claimed on direct, presumptive, or any other basis, a necessary element for establishing such a claim is the existence of a current disability. Degmetich v. Brown, 104 F. 3d 1328 (1997). The presence of a disability at the time of filing of a claim or during its pendency warrants a finding that the current disability requirement has been met, even if the disability resolves prior to the Board’s adjudication of the claim. McClain v. Nicholson, 21 Vet. App. 319 (2007).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant.

Entitlement to service connection for a right foot disability.

The Veteran contends that his right foot disability is related to service. Specifically, the Veteran alleges that he incurred a right foot injury during a period of INACDUTRA and aggravated pre-existing foot conditions.

INACDUTRA is part-time duty in the Armed Forces performed by Reserves for training purposes or by members of the National Guard of any state. 38 U.S.C. § 101 (22); 38 C.F.R. § 3.6 (c)(1). When a claim for service connection is based only on a period of ACDUTRA or INACDUTRA, there must be evidence that the claimant became disabled as a result of a disease or injury incurred or aggravated in the line of duty during that period of ACDUTRA or INACDUTRA. See 38 U.S.C. §§ 101 (2), (22), (24); 38 C.F.R. §3.6 (a); Donnellan v. Shinseki, 24 Vet. App. 167, 172 (2010); Acciola v. Peake, 22 Vet. App. 320, 324 (2008). In the absence of such evidence, the period of ACDUTRA or INACDUTRA would not qualify as "active military, naval, or air service," and the claimant would not qualify as a "veteran" for that period of ACDUTRA or INACDUTRA service alone. 38 U.S.C. § 101 (2), (24); see Acciola, 22 Vet. App. at 324.

Here, the evidence supports incurrence of a right foot injury during a period of INACDUTRA in March 2007. A July 2007, line of duty determination from the Department of the Navy reflects that on the Veteran was diagnosed with a right foot injury that occurred during two days of inactive duty training in March 2007. 

Because the right foot injury was sustained during the March 2007 period of INACDUTRA, veteran status is established for this period, and hence basic eligibility for service connection. See Bowers v. Shinseki, 26 Vet. App. 201, 206 (2013); Mercado-Martinez v. West, 11 Vet. App. 415, 419 (1998); 38 U.S.C. § 101 (24); 38 C.F.R. § 3.6 (a).

The Veteran’s service treatment records indicate that he sustained an injury to his right foot in March of 2007 while training. The Veteran received x-rays two days after the injury that revealed dislocation of the right 2nd, 3rd, 4th metatarsal phalangeal joints. The examination also found that the Veteran had substantial hallux valgus deformity, hammer toe deformities, and was 7 to 8 months out after a Morton’s neuroma excision. The Veteran received another examination and additional x-rays for his right foot injury two weeks after the injury. The findings were similar to the initial examination. The examiner also noted that he Veteran had a history of long standing hallus valgus of his right foot. 

Following these two examinations, the Veteran’s treatment records show an substantial amount of treatment, examination, physical therapy, and surgery related to his right foot injury, including the associated nonunion of metatarsal joints. 

During the period on appeal, the Veteran has a current diagnosis for nonunion of the metatarsal bones (right foot injury, status post-metatarsal resection) and hammer toe. See May 2018 VA examination. The Board notes that, while the Veteran did receive a metatarsal resection, his diagnosis for nonunion of metatarsal bones remains current and received a severity evaluation of moderately severe. Id.

The Veteran also received surgery and treatment for hallux valgus and Morton’s neuroma. However, the record does not indicate that he has a current diagnosis for these conditions during the period on appeal. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

In February 2013, the Veteran received a VA Examination for his foot condition. The examiner listed the Veteran’s current and previous diagnoses as Morton’s neuroma, metatarsalgia, hammer toes, hallux valgus, and dislocated metatarsophalangeal joints. The examiner found that it would be resorting to mere speculation to opine whether Veteran’s right 2nd, 3rd, 4th MTP joint dislocations with metatarsalgia are due to the training incident in March 2007. The examiner also stated that the Veteran’s hallux valgus, Morton’s neuroma, hammer toes are not due to the training incident. The examiner did not opine as to whether any of the Veteran’s conditions were aggravated by the incident.

In April 2018, the Veteran received an independent medical examination for his foot conditions. The examiner found that the Veteran had several pre-existing right foot conditions prior to the March 2007 training injury: hallux valgus, hammer toe, and Morton’s neuroma. The examiner found that the Veteran’s dislocation of the metatarsophalangeal joints was a product of the March 2007 injury. The examiner stated that the x-rays conducted immediately following the injury and in subsequent months show dislocation of the metatarsophalangeal joints which were not present on prior examination and in the preceding medical records. The examiner further opined that it is also at least as likely as not that the foot conditions in the March 2007 x-rays showed increased disability over previous treatment records for same/similar condition, therefore revealing permanent aggravation/exacerbation of previous conditions. 

The examiner also stated that it is at least as likely as not (50 percent or greater probability) that the March 4, 2007 injury was the cause of the permanent aggravation/exacerbation of the foot conditions.

In May 2018, the Veteran received a VA examination for his foot conditions. The Veteran was diagnosed with hammer toes, status post bunionectomy (for hallux valgus), and a right foot injury, status-post metatarsal resection (metatarsal nonunion encompassed by diagnosis). The examiner noted that the Veteran had surgery for Morton’s Neuroma prior to the March 2007 training injury. The examiner determined that the right foot injury, status-post metatarsal resection was moderately severe; chronically compromised weight bearing; and requires arch supports, custom orthotic inserts, or shoe modification. The examiner noted that the Veteran received surgery for hallux valgus in November 2007, a modified McBride bunionectomy. The examiner found that the Veteran had hammer toe on the second and third toe of his right foot. 

The examiner found that the Veteran’s right foot disability resulted in less movement than normal, swelling, disturbance of locomotion, and interference with standing. The examiner stated that the Veteran has limited movement of his 2nd, 3rd, 4th, and 5th metatarsals on the right foot. The examiner stated that the Veteran occasionally has swelling and difficulty walking and standing for long periods of time.

The examiner stated that the Veteran’s right foot injury on March 2007 involved the dislocation of the his 2nd, 3rd, 4th, and 5th toes which led to severe pain and affected gait. The examiner stated that this injury required a metatarsal resection. The examiner found that the Veteran’s hallux valgus and hammertoes increased in manifestations following the March 2007 training injury. The examiner opined that these conditions, which clearly and unmistakably existed prior to service, are at least as likely as not aggravated beyond their natural progression by an in-service injury, event, or illness. 

The Board acknowledges the differing opinions proffered by three equally qualified medical professionals and concludes that one opinion does not outweigh the others. The Board thus finds that the evidence is at least in relative equipoise as to whether the Veteran’s right foot disability, to include nonunion of the metatarsal bones and hammer toe, is related to military service. The Board notes that when the evidence is in relative equipoise, by law; the Board must resolve all reasonable doubt in favor of the claimant. See U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 

Therefore, the Board finds that service connection for a right foot disability, to include nonunion of the metatarsal bones (right foot injury, status post-metatarsal resection) and hammer toe, is warranted. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309. The extent of the problem is not before the Board at this time.

Entitlement to service connection for a back disability, to include as secondary to a right foot disability.

The Veteran contends that his back disability is related to his right foot disability. Specifically, the Veteran contends that an abnormal gait caused by his right foot disability caused his current back condition.

The Veteran has a current diagnosis for a back disability, including spinal fusion, spondylolisthesis, and degenerative disc disease. See May 2018 VA Examination. 

As discussed above, the Veteran received two examinations immediately following his right foot injury. During the second examination, the physician noted that the Veteran has an abnormal gait, stating that he was walking on his heal and unable to push off at all with hit gait pattern. In a periodic health assessment for the Navy Reserves in September 2007, it was noted that the Veteran walked with a noticeable limp.

In February 2013, the Veteran received a VA examination for back conditions. The Veteran was diagnosed with degenerative disc disease, lumbosacral spine. The examiner opined that the Veteran’s back condition is not due to or caused by or aggravated by claimed right foot condition. The examiner’s rationale was that review of the Veteran’s file indicates that the Veteran’s back problems started in the early 2000s.

The examiner provided an addendum to this examination in September 2018. The examiner opined that the Veteran’s claimed back condition is not related to complaints of back pain while in service. The examiner rationale was that the complaints were for generalized pain associated with an upper respiratory tract infection and had nothing to do with the spine.

In June 2016, the Veteran received an independent medical examination for his back condition. The examiner found that it is at least as likely as not (at least a 50% probability) that Veteran’s back condition is a result of his right foot condition. The examiner explained that the Veteran’s aberrant gait caused by his right foot condition caused biomechanical stress to the Veteran’s lumbosacral region, causing his current back condition. The examiner also provided medical research and literature supporting the link between limping and back pain. 

In April 2018, the Veteran received an independent medical examination for his back conditions. The examiner opined that it was as likely as not that the Veteran’s back conditions are a result of or have been aggravated beyond natural progression by his foot conditions. The examiner explained that chronic foot pain, with a resulting limp and/or heel walking, as the patient was noted to have, can cause increased stress on the low back in order to compensate for the foot due to increased pain in the foot with weightbearing. Over time with continued abnormal gait, patients can develop degenerative changes of the discs and vertebrae, as in this case, due to the abnormal distribution of weight in this region.

In May 2018, the Veteran was provided a VA examination for back conditions. The Veteran was diagnosed with spinal fusion, spondylolisthesis, and degenerative disc disease. The examiner also found radiculopathy of in the bilateral lower extremities. The examiner stated that the Veteran’s back problems had their onset in 2008 and stemmed from his gait. The examiner opined that the back pain reported in service in 1976 was generalized pain associated with an upper respiratory infection, not the lumbar spine. The examiner stated that the Veteran’s back condition is less likely than not (less than 50 percent probability) proximately due to or the result of the Veteran’s claimed right foot injury.

The Board notes that May 2018 examination report appears somewhat contradictory. While the examiner provided a negative nexus opinion, the examiner also found that the Veteran’s back conditions stemmed from his altered gait. This opinion regarding the Veteran’s altered gait is consistent with the June 2016 and April 2018 positive nexus opinions.

The Board acknowledges the differing opinions proffered by four equally qualified medical professionals and concludes that one opinion does not outweigh the others. The Board thus finds that the record evidence is at least in relative equipoise as to whether the Veteran’s back disability is related to military service. The Board notes that when the evidence is in relative equipoise, by law; the Board must resolve all reasonable doubt in favor of the claimant. See U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 

Therefore, the Board finds that service connection for a back disability is warranted. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309, 3.310. The extent of the problem is not before the Board at this time.

Entitlement to service connection for a sleep disorder, to include as secondary to a right foot disability and back disability.

The Veteran contends that he has a sleep disorder, to include as secondary to his right foot disability and back disability.

The Veteran’s service treatment records (STR) contain no diagnoses, reports, complaints, or treatments pertaining to a sleeping disorder. 

In medical records associated with pain management, the Veteran reported problems sleeping during some checkups. See Medical Treatment Records entered on July 3, 2013. In the Veterans Social Security Administration records, the Veteran reported occasionally sleep disturbances due to pain. A February 2009 preoperative examination noted a negative sleep test.

Review of the Veteran’s medical treatment records associated with the claims file reveals no diagnosis for a sleep disorder during the appeal period or prior to the Veteran’s filing of the claim. 

The Veteran was provided a VA General Medical examination in February 2013. The examination did not identify a diagnosis for or symptoms of a sleep disorder. 

The Board acknowledges that the Veteran was not afforded a VA examination to specifically address sleep disorders; however, the Board finds that no such development is warranted based upon the facts of this case. See McLendon v. Nicholson, 20 Vet. App. 79 (2006),

Under McLendon v. Nicholson, 20 Vet. App. 79 (2006), VA must provide a VA medical examination when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the Veteran's service or with another service-connected disability, but (4) insufficient competent medical evidence on file for the VA to make a decision on the claim. The standards of McLendon are not met in this case as there is no evidence of a current diagnosis or evidence of persistent or recurrent symptoms of a sleep disorder.

No additional evidence has been submitted to show a current diagnosis or treatment for a sleep disorder.

To the extent the Veteran alleges a sleep disorder, it appears to be based on self-diagnosis and not on any statement from qualified medical professionals. The Veteran is a layperson, lacking any specialized medical knowledge or training, and is not competent to provide such diagnoses in this case. Kahana v. Shinseki, 24 Vet. App. 428, 433 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007).

Congress has specifically limited entitlement to service-connected benefits to cases where there is a current disability. “In the absence of proof of a present disability, there can be no valid claim.” Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). The preponderance of the evidence is against finding that the Veteran has a current diagnosis for a sleep disorder.

Based on above, the Board finds that the Veteran’s entitlement to service connection for a sleep disorder is not warranted. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303. 

In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim, that doctrine is not applicable. See U.S.C. §5107(b); 38 C.F.R. §3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

REASONS FOR REMAND

Entitlement to total disability based on individual unemployability (TDIU).

The Veteran contends that his disabilities on appeal have caused him to be unable to obtain and maintain substantially gainful employment. Currently, as a result of the above decision, the Veteran is service-connected for a right foot disability and a back disability. Hence, the matter of entitlement to TDIU is inextricably intertwined with the rating assigned upon implementation by the RO of the award of service connection for the disability. RO is therefore asked to complete this implementation and then readjudicate the Veteran's claim for TDIU.

The matter is REMANDED for the following action:

1. Obtain the Veteran’s updated VA treatment records and associate them with the evidence of record. If possible, the Veteran himself should submit these records (if any), and any other new treatment for this problem, himself, to expedite the case. Any assistance on this issue would be appreciated.

2. The Agency of Original Jurisdiction should assign ratings to the disabilities granted in this Board decision and complete any additional development regarding the Veteran’s claim for TDIU.

(Continued on the next page)

 

3. After completion of the aforementioned, the AOJ should readjudicate the claim for TDIU. If the benefit sought on appeal is not granted, then the AOJ should provide the Veteran with a supplemental statement of the case and afford him the appropriate opportunity to respond thereto. Thereafter, the case must be returned to the Board for further appellate review.

 

JOHN J. CROWLEY

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD E. E. VanValkenburg, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.